Carolyn GREATHOUSE, Individually and as Independent Executor of the Estate of Clyde R. Greathouse, Deceased, Appellant,

v.

Gary L. McCONNELL, Appellee.

No. 01–97–00324–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 30, 1998.

Timothy Ferguson, Cheryl A. Schultz, Beaumont, for appellant.

Gary L. McConnell, Lynn J. Klement, Angleton, for appellee.

Before SCHNEIDER, C.J., and WILSON and SMITH,*JJ.

## OPINION

WILSON, Justice.

The case involves a legal malpractice action originally brought by the appellants, Carolyn Greathouse in her individual capacity and as representative of her husband's estate (Greathouse), in state district court. The case was later transferred to a statutory probate court which granted a summary judgment on the merits of the dispute in favor of the appellee, Gary McConnell.

Greathouse appealed to this Court challenging both the transfer and the granting of summary judgment. We affirm.

### Facts

Greathouse's current claims against McConnell arise out of his representation of Greathouse's deceased husband, Clyde R. Greathouse (Clyde), and Forrest Allen & Associates, Inc. (Forrest Allen), an insurance agency formerly owned by Clyde, in a suit (the "underlying suit") brought against them by Charter National Bank–Southwest (Charter) to recover a deficiency judgment on a $250,000 loan Charter made to the Forrest Allen agency. Pursuant to the terms of that loan, the Forrest Allen agency was pledged as collateral and Clyde agreed to act as guarantor. After Charter declined to renew the note, Clyde informed Charter that he was abandoning the Forrest Allen agency. Charter than took control of the agency and sold it to another insurance agency in Corpus Christi. Charter subsequently sought to recover a deficiency judgment from Forrest Allen as maker and from Clyde as guarantor on the note.

After Clyde's death, Greathouse was appointed independent executrix of his estate and, on June 3, 1986, Clyde's will was admitted to probate in the statutory Probate Court and County Court at Law Number 3 of Brazoria County (the probate court). The administration of Clyde's estate is still pending, and no final distribution or accounting has been made.

Because Clyde died during the pendency of the underlying suit, Greathouse, in her capacity as independent executrix of Clyde's estate, was substituted as a party in place of Clyde. On August 24, 1989, the trial court entered a judgment in the underlying suit against Forrest Allen and against Clyde's estate for an amount in excess of $250,000.

On August 11, 1993, Greathouse, in her individual capacity, instituted the current action (the "legal malpractice suit") against McConnell in the 149th District Court of

---

* The Honorable Jackson B. Smith, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

Brazoria County (the district court) alleging legal malpractice and violations of the Deceptive Trade Practices Act (DTPA), TEX.BUS. & COM.CODE ANN. § 17.41–.63 (Vernon 1987 & Supp.1998), stemming from McConnell's representation of Clyde and Clyde's estate in the underlying suit. In an amended petition filed on May 3, 1995, Greathouse sued McConnell in her capacity as independent executrix of Clyde's estate as well as in her individual capacity, and added allegations of breach of contract and fraud. On November 22, 1995, McConnell filed a motion in the probate court asking the court to transfer the legal malpractice suit from the district court to itself and to consolidate that action with Clyde's estate administration pending in the probate court. McConnell alleged that section 5B of the Probate Code authorized the probate court to transfer the legal malpractice suit from the district court to itself because the legal malpractice suit was appertaining to or incident to Clyde's estate. Greathouse filed a motion opposing the transfer claiming that the legal malpractice suit was not appertaining to or incident to the estate administration, and, therefore, transfer pursuant to section 5B was inappropriate. The probate court granted McConnell's motion.

After the legal malpractice suit was transferred, McConnell filed a motion for summary judgment which the probate court granted on December 6, 1996 without stating the grounds. In two points of error, Greathouse alleges that (1) the probate court lacked subject matter jurisdiction to transfer the legal malpractice suit from the district court to itself, and (2) even if the transfer was proper, the trial court erred in granting summary judgment to McConnell.

### Transfer Pursuant to Section 5B of the Probate Code

In her first point of error, Greathouse alleges the probate court lacked statutory authority to transfer the legal malpractice claim from the district court to itself, and, therefore, the order granting the transfer and all subsequent rulings by the probate court are void. When a trial court acts without subject matter jurisdiction by ex-

ceeding the limits of its statutory authority, any orders entered by the court are void, and not merely voidable. *See Qwest Microwave, Inc. v. Bedard,* 756 S.W.2d 426, 437 (Tex. App.–Dallas 1988, orig. proceeding). Subject matter jurisdiction is essential to the authority of a court to decide a case; it is never presumed and cannot be waived. *Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 443–44 (Tex.1993).

### 1. The Probate Code

The provisions of the Probate Code at issue in this appeal are section 5B and subsections (b) through (e) of section 5A. Section 5B of the Probate Code, entitled "Transfer of Proceeding," permits the judge of a statutory probate court to transfer from another court an action appertaining to or incident to an estate pending in the probate court. Specifically, section 5B provides:

> A judge of a statutory probate court on the motion of a party to the action or on the motion of a person interested in an estate, may transfer to his court from a district, county, or statutory court a cause of action *appertaining to or incident to an estate* pending in the statutory probate court and may consolidate the transferred cause of action with the other proceedings in the statutory probate court relating to that estate.

TEX.PROB.CODE ANN. § 5B (Vernon Supp. 1998) (emphasis added).

Subsections (b) through (e) of section 5A, entitled "Matters Appertaining and Incident to an Estate and Other Probate Court Jurisdiction," set forth the subject matter jurisdiction of statutory probate courts. Those sections, as they existed in 1995, provided, in pertinent part:

> (b) In proceedings in the statutory probate courts and district courts, the phrases "appertaining to estates" and "incident to an estate" in this Code include the probate of wills, the issuance of letters testamentary and of administration, and the determination of heirship, and also include, but are not limited to, all claims by or against an estate, all actions for trial of title to land and for the enforcement of liens thereon, all actions for trial of the right of property,

all actions to construe wills, the interpretation and administration of testamentary settlement, partition, and distribution of estates of deceased persons.... In situations where the jurisdiction of a statutory probate court is concurrent with that of a district court, any cause of action appertaining to estates or incident to an estate shall be brought in a statutory probate court rather than in the district court.

(c) A statutory probate court has concurrent jurisdiction with the district court in all actions: (1) by or against a person in the person's capacity as a personal representative....

(d) A statutory probate court may exercise the pendent and ancillary jurisdiction necessary to promote judicial efficiency and economy.

(e) Subsections (c) and (d) apply whether or not the matter is appertaining to or incident to an estate.

Act of May 30, 1993, 73rd Leg., R.S., ch. 957, § 6, 1993 Tex.Gen.Laws 4081, 4162 (amended 1997) (current version at TEX.PROB.CODE ANN. § 5A(b) (Vernon Supp.1998)); TEX. PROB.CODE ANN. § 5A(c)–(e) (Vernon Supp. 1998).

## 2. Legislative and Decisional Law History

To answer whether the probate court was authorized under the Probate Code to transfer the district court case to itself, a review of the case law and legislative amendments relevant to these sections is necessary. In *Seay v. Hall*, the Texas Supreme Court, interpreting an earlier version of Section 5A(b), held that a statutory probate court did not have jurisdiction over a wrongful death and survival action filed in that court by the representative of a decedent's estate. 677 S.W.2d 19, 23 (Tex.1984). The court stated that the "appertaining to an estate and incident to an estate" language of section 5A(b) was designed to limit probate court jurisdiction to matters in which the *controlling issue* was the settlement, partition, or distribution of an estate, and that wrongful death actions

did not fall within this definition. *Seay,* 677 S.W.2d at 23. *Seay* did not involve an interpretation of the transfer statute, section 5B, but addressed only whether the plaintiff's claims could be filed in the probate court in the first instance pursuant to the jurisdictional requirements of section 5A(b).

In 1985, the Legislature responded to *Seay* by amending the Probate Code to broaden statutory probate court jurisdiction. *Palmer v. Coble Wall Trust Co., Inc.,* 851 S.W.2d 178, 181 (Tex.1992). The 1985 amendment added a sentence to the end of section 5A(b) which provided that "in actions by or against a personal representative, the statutory probate courts have concurrent jurisdiction with the district court." *Palmer,* 851 S.W.2d at 181. The purpose of the amendment was to legislatively overrule the result in *Seay* by insuring that personal representatives could bring wrongful death or survival actions on behalf of others in the statutory probate courts. *See Palmer,* 851 S.W.2d at 181.

However, after the 1985 amendment many courts continued to apply the "controlling issue" test set out in *Seay* in determining whether a claim was "appertaining to or incident to an estate," which had the effect of denying statutory probate courts jurisdiction over wrongful death and survival actions because the "controlling issue" in such actions was not the settlement, partition, and distribution of an estate. *See Palmer,* 851 S.W.2d at 181. To further clarify the issue, in 1989 the Legislature again amended section 5A to give probate courts jurisdiction over claims by or against personal representatives "whether or not the matter is appertaining to or incident to an estate." *Palmer,* 851 S.W.2d at 182.[1]

In 1992, the supreme court in *Palmer* addressed the effect of the 1985 and 1989 amendments to section 5A, and the continuing validity of the "controlling issue" test in determining probate court jurisdiction under that section. *Palmer,* 851 S.W.2d at 178. The court stated that to apply the "controlling issue" test in the context of the 1985 amendment, as some courts continued to do,

---

1. The 1989 amendment to section 5A was the last legislative change relevant to this appeal. An amendment in 1993 had no bearing on the issues

in this case, and an amendment in 1997 became effective after the conclusion of the trial court proceedings.

would deny probate courts jurisdiction over wrongful death and survival actions, in direct contravention of the purpose of the amendment. *Palmer*, 851 S.W.2d at 181–82. Furthermore, the court stated the 1989 amendment, which gave probate courts jurisdiction over claims by or against personal representatives whether or not the matter was "appertaining to or incident to an estate," had dispensed altogether with the need to determine whether the "controlling issue" test applied in suits involving personal representatives. *Palmer*, 851 S.W.2d at 182. However, the court stated that the need for an ascertainable meaning of "appertaining to or incident to an estate" still existed in certain circumstances. *Id.* The court went on to confirm its earlier reasoning in *Seay* that, under section 5A, a suit is "appertaining to or incident to an estate" when the controlling issue is the settlement, partition, or distribution of an estate insofar as it does not apply to suits by or against a personal representative. *Palmer*, 851 S.W.2d at 182. As in *Seay*, *Palmer* addressed only a probate court's concurrent jurisdiction over wrongful death and survival actions, but did not involve a transfer under section 5B of the Probate Code.

### 3. The Present Dispute

■ As previously stated, McConnell moved to transfer the legal malpractice suit from the district court to the probate court pursuant to section 5B of the Probate Code. The trial court granted McConnell's request, specifically finding that the legal malpractice claim was "appertaining to or incident to" Clyde's pending estate administration. On appeal, the only issue contested by the parties is whether the legal malpractice claim was "appertaining to or incident to" a pending estate administration, as required by section 5B. *See Henry v. LaGrone*, 842 S.W.2d 324, 326 (Tex.App.—Amarillo 1992, orig. proceeding) (holding that transfer under section 5B requires showing that (1) court ordering transfer is a statutory probate court, (2) an estate is pending in that court, (3) a separate case is pending in a district, county, or statutory court, and (4) *that case involves claims that are appertaining to or incident to the estate pending in the statutory probate*

*court* ). On appeal, McConnell argues that, because the definition of "appertaining to or incident to an estate" found in section 5A(b) includes "all claims by or against an estate," Greathouse's legal malpractice claim brought in her capacity as the personal representative of Clyde's estate was a claim "appertaining to or incident to an estate," and, therefore, transfer pursuant to section 5B was proper. According to McConnell, whether the legal malpractice claim is one "appertaining to or incident to an estate" under section 5B should not be judged by the "controlling issue" test because, as the supreme court stated in *Palmer*, that test is not applicable when the claim is brought by or against a personal representative. *See Palmer*, 851 S.W.2d at 182.

Greathouse points out two cases which she claims support her position. *See In re Ford Motor Co.*, 965 S.W.2d 571, 575 (Tex.App.—Houston [14th Dist.] 1997, orig. proceeding); *D.B. Entertainment, Inc. v. Windle*, 927 S.W.2d 283, 288 (Tex.App.—Fort Worth 1996, orig. proceeding). In *D.B. Entertainment*, the defendants in a wrongful death and survival action pending in a district court sought mandamus relief after a statutory probate court transferred the district court case to itself pursuant to section 608 of the Probate Code to be consolidated with guardianship proceedings pending in the probate court. TEX.PROB.CODE ANN. § 608 (Vernon Supp.1998); *D.B. Entertainment*, 927 S.W.2d at 284–85. Sections 607 and 608 of the Probate Code, which apply to guardianships, are almost identical to sections 5A and 5B respectively. TEX.PROB.CODE ANN. §§ 607, 608 (Vernon Supp.1998). Because of the similarity in the statutes, the Fort Worth Court examined sections 5A and 5B and the case law construing those sections to determine if the section 608 transfer was appropriate. The court held that the wrongful death and survivorship action at issue in that case was not a cause of action "appertaining to or incident to" a guardianship estate, and, therefore, the transfer was not authorized by section 608. The court noted that the "controlling issue" test, used to determine what claims were "appertaining to or incident to" an estate, was still good law in certain cir-

cumstances, as was the *Seay* court's determination that wrongful death actions do meet that standard. *D.B. Entertainment*, 927 S.W.2d at 286. The court also noted that, despite the fact that statutory probate courts were unquestionably given *concurrent jurisdiction* over claims by or against personal representatives by adding to section 5A the language "whether or not the [claim by or against a representative] is appertaining to or incident to an estate," this language does not appear in section 5B, which controls the *transfer* of actions. *D.B. Entertainment*, 927 S.W.2d at 287–88. The court concluded that (1) because nothing in section 608 authorizes the *transfer* of actions by or against a person in their capacity as a guardian, regardless of whether the matter is "appertaining to or incident to" a guardianship estate, and because (2) a wrongful death action was not "appertaining to or incident to" an estate under the "controlling issue" test, the probate court had no statutory authority to transfer the action to itself under section 608. *D.B. Entertainment*, 927 S.W.2d at 287.

In *Ford*, the defendants in a wrongful death and survival action pending in a district court sought mandamus relief after a statutory probate court transferred that case to itself pursuant to section 5B after finding that the wrongful death action was "appertaining to or incident to" an estate action pending in the probate court. *Ford*, 965 S.W.2d at 572–73. The Fourteenth Court relied on *D.B. Entertainment*, finding its reasoning equally applicable to the facts in *Ford*, 965 S.W.2d at 574. The court went on to note that *D.B. Entertainment* was not inconsistent with *Palmer*. *Ford*, 965 S.W.2d at 574. According to the Fourteenth Court, although in *Palmer* the supreme court acknowledged that the subsequent amendments to section 5A dispensed with the need to determine by use of the "controlling issue" test whether a claim is "appertaining to or incident to an estate" in suits involving a personal representative, *Palmer* did recognize the continued validity of that test in certain circumstances. *Ford*, 965 S.W.2d at 574. The Fourteenth Court held that, as implicitly recognized in *D.B. Entertainment*, a *transfer* is such a circumstance because there is nothing in section 5B that authorizes

the transfer of an action by or against a personal representative, regardless of whether the action is "appertaining to or incident to" an estate. *Ford*, 965 S.W.2d at 574. The court concluded that, although the relators in that case argued that section 5B cannot be applied without looking to section 5A, section 5A is a jurisdictional statute that determines the court where a suit may be filed. *Ford*, 965 S.W.2d at 575. Unlike section 5B, the court stated, section 5A does not govern transfers, and courts need only look to section 5A to ascertain the definition of the phrase "appertaining to or incident to" an estate. *Ford*, 965 S.W.2d at 575.

Based on our reading of the plain language of sections 5A and 5B, and upon the nature of the underlying cause of action at issue in this case, we decline to follow the holdings in *Ford* and *D.B. Entertainment*. At the outset, we note that, unlike *Seay*, *Ford*, and *D.B. Entertainment*, this case involves the transfer of a legal malpractice claim and not wrongful death and survivorship claims. Key to the holdings in both *Ford* and *D.B. Entertainment* was the fact that, according to that portion of the *Seay* opinion which is still good law, wrongful death and survivorship claims are not causes of action appertaining to or incident to an estate. *Ford*, 965 S.W.2d at 575; *D.B. Entertainment*, 927 S.W.2d at 287. No cases have extended this per se rule to other causes of action.

Notwithstanding the fact that in this case we are not faced with a wrongful death or survivorship claim, we disagree with the conclusion reached by the courts in *Ford* and *D.B. Entertainment* that, because section 5A is a "jurisdiction" statute and section 5B is a "transfer" statute, the two statutes should not be read together. *See Ford*, 965 S.W.2d at 575; *D.B. Entertainment*, 927 S.W.2d at 287–88. In both *Ford* and *D.B. Entertainment*, the courts noted that, although section 5A grants to the probate courts *concurrent jurisdiction* over all actions by or against a personal representative *whether or not the matter is appertaining to or incident to an estate*, section 5B contains no language allowing the court to *transfer* any action *whether or not the matter is appertaining to or incident to an estate*. *See Ford*, 965 S.W.2d at

575; *D.B. Entertainment*, 927 S.W.2d at 287–88. The courts concluded that, due to the absence of this language in section 5B, a probate court may only transfer causes of action which are appertaining to or incident to an estate, regardless of whether the action was brought by a personal representative. *See Ford*, 965 S.W.2d at 575; *D.B. Entertainment*, 927 S.W.2d at 287–88.

■ However, we find no reason to draw such a distinction between sections 5A and 5B. In unambiguous terms, the legislature amended section 5A in 1989 to grant probate courts concurrent jurisdiction over *all* actions brought by or against a personal representative, whether or not those claims standing alone would meet the definition of "appertaining to or incident to" an estate. *See Palmer*, 851 S.W.2d at 182. While similar language was not added to section 5B, we believe the broad grant of jurisdiction found in section 5A requires that the two sections be read together. We do not believe the legislature intended to grant the probate courts *concurrent jurisdiction* over such claims in one section and then restrict the *transfer* of those claims in another. As the supreme court stated in *Palmer*, the 1989 amendments "dispensed with the need to make this inquiry [whether an action was appertaining to or incident to an estate] in suits involving a personal representative" under section 5A. *Palmer*, 851 S.W.2d at 182. We find this reasoning applies equally to section 5B. Therefore, we hold that a statutory probate court may properly transfer to itself any case brought by or against a personal representative of an estate, regardless of whether the claim meets the definition of "appertaining to or incident to" an estate. Accordingly, because Greathouse brought her legal malpractice claim in her capacity as independent executrix of Clyde's estate, and because Clyde's estate administration was pending before the probate court, the court had jurisdiction to transfer the legal malpractice suit to itself.

We overrule Greathouse's first point of error.

## Propriety of Summary Judgment

Because we have held that the probate court properly transferred Greathouse's legal malpractice claim to itself, we now address Greathouse's second point of error which challenges the trial court's granting of summary judgment in favor of McConnell.

### 1. Standard of Review

A defendant, as the movant, is entitled to prevail on a motion for summary judgment if the defendant can establish with competent summary judgment proof that, as a matter of law, there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 679 (Tex.1979). The standard for appellate review of a summary judgment is well established:

> (1) the movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law;
>
> (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant must be taken as true; and
>
> (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). On appeal, we will affirm a summary judgment if any of the theories advanced in the motion is meritorious. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex.1996).

### 2. Nature of Action

■ Before determining if any of the grounds asserted by McConnell supported the trial court's grant of summary judgment, we must first address the precise nature of the claims Greathouse has alleged against McConnell. A defendant is not entitled to a summary judgment on the entire case unless the defendant files a summary judgment that addresses, and then conclusively demonstrates, that the plaintiff is not entitled to recover on any theory of liability alleged. *Klein v. Reynolds, Cunningham, Peterson & Cordell*, 923 S.W.2d 45, 48–49 (Tex.App.—

Houston [1st Dist.] 1995, no writ). Great-house's petition contained allegations of legal malpractice (professional negligence), breach of fiduciary duty, breach of the duty of good faith and fair dealing, fraud, DTPA violations, breach of contract, and breach of express and implied warranties. McConnell contends that Greathouse should not be allowed to "fracture" what is essentially a legal malpractice claim into several causes of action. We agree.

Although Greathouse did allege multiple causes of action, they were all essentially "means to an end" to achieve one complaint of legal malpractice. See *Klein*, 923 S.W.2d at 49. A cause of action arising out of bad legal advice or improper representation is legal malpractice. *Sullivan v. Bickel & Brewer*, 943 S.W.2d 477, 481 (Tex.App.—Dallas 1995, writ denied). Although Greathouse alleged separate and distinct causes of action, the crux of each of those claims was that McConnell did not provide adequate legal representation to Greathouse. Greathouse's petition separately alleges negligence, breach of fiduciary duty, and breach of the duty of good faith and fair dealing; however, each of those allegations are followed by identical paragraphs detailing how McConnell breached these duties to Greathouse. Under her DTPA subheading, Greathouse alleged that McConnell (1) falsely represented that his legal services were of a competent quality, when they were not, (2) represented that the attorney-client relationship between them conferred certain rights, remedies or obligations that it did not have, (3) engaged in an unconscionable course of conduct that took advantage of Greathouse's lack of knowledge and experience such that there existed a gross disparity between the value of legal services received and the consideration paid to McConnell for those services, because McConnell's legal services were of no value. Under her breach of contract subheading, Greathouse alleged that (1) McConnell made express and implied warranties to Greathouse that McConnell would provide good and competent legal services, and McConnell breached those warranties by failing to, among other things, handle the lawsuit as a reasonably prudent attorney would have.[2] As to Greathouse's allegations of fraud, she does not provide any specific allegations separate from those alleged misrepresentations which, according to Greathouse, violated the DTPA. We hold that these claims amounted to nothing more than allegations of legal malpractice, and, therefore, McConnell could have obtained summary judgment on the entire case by disproving, as a matter of law, one element of Greathouse's legal malpractice cause of action.

### 3. Legal Malpractice Cause of Action

 Generally, to recover on a claim of legal malpractice, a plaintiff must prove: (1) the attorney owed the plaintiff a duty; (2) the attorney breached that duty; (3) the breach proximately caused the plaintiff's injuries; and (4) damages occurred. *Farah v. Mafrige & Kormanik, P.C.*, 927 S.W.2d 663, 670 (Tex.App.—Houston [1st Dist.] 1996, no writ). When a legal malpractice case arises from prior litigation, the plaintiff has the burden to prove that, "but for" the attorney's breach of duty, he or she would have prevailed on the underlying cause of action and would have been entitled to judgment. *Jackson v. Urban, Coolidge, Pennington & Scott*, 516 S.W.2d 948, 949 (Tex.Civ.App.—Houston [1st Dist.] 1974, writ ref'd n.r.e.); *Schlager v. Clements*, 939 S.W.2d 183, 186–87 (Tex.

---

**2.** In *Jampole v. Matthews*, we recognized a cause of action for breach of contract independent of a legal malpractice claim. 857 S.W.2d 57, 62 (Tex.App.—Houston [1st Dist.] 1993, writ denied). That case, however, limited this distinction to actions against attorneys for excessive legal fees:

> We distinguish ... between an action for negligent legal malpractice and one for fraud allegedly committed by an attorney relating to the establishing and charging of fees for services. Similarly, we distinguish between an action for negligent legal malpractice and one for breach

of contract relating to excessive fees for services.

*Id.* However, this case does not involve a dispute over the amount of attorney's fees which McConnell charged Greathouse. Rather, Greathouse alleges only that, by not taking certain actions during the course of his representation, McConnell did not provide the services for which Greathouse contracted, *i.e.*, the services that a reasonably prudent attorney would have provided. Therefore, the facts of this case do not give rise to the *Jampole* exception. *See id.*

App.—Houston [14th Dist.] 1996, writ denied). This aspect of the plaintiff's burden is commonly referred to as the "suit within a suit" requirement. *See id.*

### 4. Failure to Raise Affirmative Defenses

█ Although Greathouse's pleadings alleged several breaches of the applicable standard of care, the crux of her claim was that McConnell did not raise affirmative defenses in the underlying suit which a reasonable attorney would have raised. Specifically, Greathouse alleged that McConnell should have raised the following affirmative defenses: (1) the commercial reasonableness of the sale of the collateral securing the note in the underlying case; (2) usury; and (3) interest beyond the contractual term of the note. In his motion for summary judgment, McConnell attempted to disprove the "suit within a suit" element of Greathouse's legal malpractice cause of action by showing that, even if he would have raised those affirmative defenses, Greathouse would not have prevailed in the underlying litigation. Therefore, if McConnell was successful in proving as a matter of law that raising these defenses would not have resulted in a favorable outcome for Greathouse, McConnell was entitled to summary judgment on Greathouse's legal malpractice claim.

#### a. Commercial Reasonableness

In his motion for summary judgment, McConnell attempted to show that the sale of the collateral securing the note, the Forrest Allen agency, was conducted in a commercially reasonable manner, and, therefore, raising commercial reasonableness as a defense would not have resulted in a successful

outcome for Greathouse in the underlying suit.

Section 9.504 of the Business and Commerce Code requires that, before the holder of a note can obtain a deficiency judgment against the maker, or in this case a guarantor, it must show the sale was made in a commercially reasonable manner. *See* Tex. Bus. & Com.Code Ann. § 9.504 (Vernon 1991). In support of his claim that the sale was made in a commercially reasonable manner, McConnell attached the affidavit of Winston Davis, the president of Charter Bank at the time Charter brought suit against Clyde and Forrest Allen. In his affidavit, Davis outlined the events surrounding the sale of the Forrest Allen agency, including (1) the notice given to the parties, (2) Davis's efforts to solicit bids from insurance agents in Corpus Christi, and (3) the sale of the agency to the only bidder, Courtesy Insurance Agency, for $100,000.[3] McConnell refers us to several cases in which affidavits similar to Davis's were found sufficient to prove, as a matter of law, that a sale of collateral was commercially reasonable pursuant to section 9.504. *See Wilson v. General Motors Acceptance Corp.,* 897 S.W.2d 818, 822 (Tex.App.—Houston [1st Dist.] 1994, no writ); *Folkes v. Del Rio Bank & Trust Co.,* 747 S.W.2d 443, 446 (Tex.App.— San Antonio 1988, no writ). We hold that Davis's affidavit contains sufficient information to establish, as a matter of law, that the sale was conducted in a commercially reasonable manner.

In her response to McConnell's motion for summary judgment, Greathouse objected to Davis's affidavit on the ground that it con-

---

3. Davis's affidavit began by detailing the terms of the loan transaction, specifically, that Charter loaned $253,308.19 to Forrest Allen, Clyde's insurance agency, and that the loan was guaranteed by Clyde and was secured by all rights, title and interest in the insurance expirations, commissions, accounts receivable, furniture, and fixtures belonging to Forrest Allen. Davis then *explained that Forrest Allen and Clyde were* notified that the loan would not be renewed at maturity, and that upon maturity, Charter demanded full payment of all sums owed to Charter. According to Davis, a representative of Greathouse informed Charter that the Greathouses were abandoning the insurance agency. Davis then traveled to Corpus Christi to inspect Charter's

collateral, and sent a Charter employee to watch over the collateral pending sale. Charter then gave notice of a private sale to Forrest Allen and Greathouse, a copy of which was attached to the affidavit. Davis then contacted a number of insurance agents in Corpus Christi to solicit bids for the agency. Davis received only one offer in the amount of $100,000 from Courtesy Insurance Agency, and on May 9, 1985, Charter sold the agency to Courtesy for that amount. Davis concluded that, based on his background and experience, Charter gave reasonable notice of the sale to Forrest Allen and Greathouse, and the subsequent sale of the collateral was conducted in a commercially reasonable manner.

tained legal conclusions and was therefore not competent summary judgment proof. Greathouse also attached the affidavit of Denice Smith, an attorney, which Greathouse claimed raised fact issues concerning McConnell's culpability for failing to plead and prove the affirmative defense of commercial reasonableness.

However, neither Greathouse's objections to McConnell's summary judgment proof nor her own summary judgment evidence addressed the element of her cause of action which McConnell sought to disprove, namely, the "suit within a suit" requirement. As previously stated, McConnell proved, as a matter of law, that the sale of Clyde's insurance company was conducted in a commercially reasonable manner. Therefore, *even if* McConnell would have pleaded and proved the affirmative defense of commercial reasonableness, Greathouse would not have been successful in the underlying action because the sale was commercially reasonable. Greathouse objected to those portions of Davis's affidavit in which he stated "Charter gave reasonable notice of a private sale of the collateral to Forrest Allen and the Greathouses," and "Charter subsequently sold the collateral in a commercially reasonable manner, including the method, manner, time, place and terms." However, in addition to these statements, Davis provided a detailed summary of the *facts* surrounding the loan transaction and the subsequent sale of the collateral. As in *Wilson* and *Folkes,* these facts allowed McConnell to prove the commercial reasonableness of the sale as a matter of law, notwithstanding any conclusory statements contained in the affidavit.

The affidavit of Denice Smith, attached as summary judgment evidence to Greathouse's response, also misses the mark. In her affidavit, Smith stated it was her expert opinion that a reasonably prudent attorney would have raised the affirmative defense of commercial reasonableness, and that by failing to do so, McConnell breached the standard of care owed to Greathouse. However, in her affidavit Smith did not attempt to dispute the *facts* surrounding the sale of the underlying collateral as described in Davis's affidavit, nor did she explain why the sale was not

conducted in a commercially reasonable manner. Smith merely attempted to establish that McConnell breached a duty owed to Greathouse, but did not address the question whether Greathouse would have prevailed in the underlying suit but for McConnell's negligence. Therefore, as to the affirmative defense of commercial reasonableness, Greathouse failed to raise a fact issue concerning the "suit within a suit" element of her legal malpractice cause of action.

### b. Usury

Greathouse also alleged in her pleadings that McConnell should have raised the affirmative defense of usury. In his motion for summary judgment, McConnell argued (1) the note and Clyde's guarantee, which were attached as summary judgment evidence, make clear that Clyde was liable for the interest which accrued on the note, and (2) even if Charter had charged usurious interest to Forrest Allen and sought to recover that interest from Clyde, the defense of usury was not available to Clyde because he was only a guarantor on the note.

It is well settled that usury is a defense personal to the debtor, one that a guarantor may not interpose. *Arndt v. National Supply Co.,* 633 S.W.2d 919, 925 (Tex.App.— Houston [14th Dist.] 1982, writ ref'd n.r.e.). Because Clyde was a guarantor on the note, McConnell could not have raised this defense on Clyde's behalf, and, therefore, his failure to do so could not have affected the outcome of the underlying suit.

In her response to McConnell's motion, Greathouse did not specifically mention McConnell's failure to raise usury as a defense, nor did she specifically address McConnell's summary judgment arguments on this issue. However, in her response to McConnell's motion and in her appellate brief Greathouse makes the general statement that Smith's affidavit raised fact issues precluding summary judgment. Therefore, we will review Smith's affidavit to determine if it raised a fact issue concerning McConnell's usury arguments.

As she did in connection with the affirmative defense of commercial reasonableness, Smith states in her affidavit that McConnell,

by failing to raise the affirmative defense of usury, failed to act as a reasonable and prudent attorney would have. However, in his motion for summary judgment McConnell sought to negate the "suit within a suit" element of Greathouse's legal malpractice action by proving that the affirmative defense of usury was not available to Clyde, and, therefore, Greathouse would not have prevailed in the underlying suit even if McConnell would have raised that defense. Merely stating that McConnell, by failing to raise usury as a defense, breached a duty of care to Greathouse does not counter McConnell's summary judgment argument that the defense was not available in the first instance. Therefore, as to the affirmative defense of usury, Greathouse did not raise a fact issue concerning the "suit within a suit" element of her legal malpractice cause of action.

### c. Interest Beyond the Contractual Term

Finally, Greathouse alleged McConnell was negligent by not raising interest beyond the contractual term as an affirmative defense. In his motion for summary judgment, McConnell argued that the loan documents clearly show Clyde was liable for the interest accruing on the note until final payment, and that his death had no effect on his obligation because his liability for that interest was created prior to his death. However, Greathouse makes no mention of interest beyond the contractual term in her appellate brief. Although Greathouse does make the general assertion that Smith's affidavit raises fact issues precluding summary judgment, we find no reference to the affirmative defense of interest beyond the contractual term in Smith's affidavit. We are not authorized to reverse a judgment in the absence of properly assigned error, and thus cannot address contentions which Greathouse either failed to raise or chose to abandon. *See Houston Mercantile Exch. Corp. v. Dailey Petroleum Corp.*, 930 S.W.2d 242, 249 (Tex.App.—Houston [14th Dist.] 1996, no writ). Therefore, Greathouse has waived any complaint concerning the propriety of summary judgment relating to McConnell's duty to raise the affirmative defense of interest beyond the contractual term.

### 7. Conclusion

Because McConnell proved, as a matter of law, that raising the affirmative defenses of (1) commercial reasonableness and (2) usury in the underlying suit would not have resulted in a successful outcome for Greathouse, and because Greathouse waived any argument concerning the affirmative defense of interest beyond the contractual term, we overrule Greathouse's second point of error and affirm the judgment of the trial court.