

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00599-CV

Paul H. **MARTINEZ**, Mary Ann Martinez,
Ernest A. Martinez Jr., and Stephanie E. Martinez,
Appellants

v.

## UHL, FITZSIMONS, JEWETT, BURTON, WOLFE & RANGEL, PLLC
and Ezra A. Johnson,
Appellees

From the 81st Judicial District Court, La Salle County, Texas
Trial Court No. 20-11-00181-CVL
Honorable Russell Wilson, Judge Presiding

Opinion by:  Irene Rios, Justice

Sitting:  Rebeca C. Martinez, Chief Justice
Irene Rios, Justice
Adrian A. Spears II, Justice

Delivered and Filed: December 31, 2025

AFFIRMED

This appeal arises from a legal malpractice suit brought against Ezra A. Johnson and the law firm that employed him. Appellants Paul H. Martinez, Mary Ann Martinez, Ernest A. Martinez, Jr., and Stephanie E. Martinez (collectively, "the Martinez family") appeal the trial court's summary judgment disposing of their negligence and gross negligence claims and the trial court's order granting appellees Uhl, Fitzsimons, Jewett, Burton, Wolfe & Rangel, PLLC and Ezra

A. Johnson's (collectively, "the Firm") motion for judgment on the Martinez family's remaining DTPA and breach of fiduciary duty claims under Rule 166(g) of the Texas Rules of Civil Procedure. We hold the trial court did not err when it granted summary judgment on the negligence and gross negligence claims because the Martinez family failed to file a timely response to the Firm's no evidence summary judgment motion. We also hold the trial court did not err when it granted judgment in the Firm's favor on the Martinez family's DTPA and breach of fiduciary claims because those claims were fractured negligence claims cast as different causes of action. We affirm.

### BACKGROUND

An oil and gas operator ("Trinity") approached Paul H. Martinez ("Paul") in 2017 to see if he was interested in leasing minerals from the Martinez family. Ezra A. Johnson had drafted oil and gas leases for Paul in the past, and Paul attempted to negotiate with Trinity using a prior lease drafted by Johnson. After Trinity struck terms in the lease and returned a redlined copy of the lease to Paul, Paul solicited Johnson's services in 2018 to help negotiate and finalize the lease.

In the summer of 2018, Paul emphasized to Johnson that he wanted a water agreement with Trinity that obligated Trinity to purchase water used for the oil and gas drilling from the Martinez family. The water would be produced from a water well on the Martinez family's property. Notably, the Martinez family did not want the oil and gas wells drilled on its property. Instead, the wells would be horizontally drilled from a neighbor's adjacent property to the North of the Martinez family property. As such, any water that would be pulled from the Martinez family's water well would have to be transported to the neighbor's property because that is where the oil and gas wells were going to be drilled.

As Trinity was approaching its deadline to drill the oil and gas wells, it sent Johnson an email stating it will need an executed oil and gas lease in hand or it will have to revise its drilling schedule. The email also stated Trinity would buy water from the Martinez family if the water well was capable of producing the volume of water needed for the drilling operation and if it was economically prudent to pull the water from the Martinez family's water well. After Paul sent Trinity an email inquiring about a water agreement, Trinity replied stating it would have to confirm that the Martinez family water well was capable of producing water at the rate necessary to drill and complete the planned oil and gas wells. Eventually, Trinity imposed a deadline for the Martinez family to accept Trinity's terms on the oil and gas lease and informed Johnson that a water agreement was not necessary if the Martinez family did not sign the oil and gas lease. Against Johnson's advice, the Martinez family accepted Trinity's terms on the oil and gas lease. In the email telling Johnson to accept the terms of the oil and gas lease, Paul reiterated to Johnson that Trinity "must purchase water from us."

Apparently, some months passed while Johnson and Trinity finalized the lease. In September 2018, Paul sent Johnson an email stating "We are anxious to get this done so please try to get this agreement signed quickly." Johnson asked Paul whether he was referring to the water agreement or the oil and gas lease. Paul responded: "Well? We agreed to [the royalty percentage] only if we sell them water. So, I suppose we need the water agreement first. But I would like the [oil and gas] lease done ASAP." Johnson replied with an email stating: "The lease is done and ready to sign. Right now, however, there is nothing tying the lease to the water agreement. If you sign the lease now, [Trinity] can walk away from the water agreement and not pay you another penny. That's why I was holding back."

On September 24, 2018, the parties signed the oil and gas lease. That same day, the parties also signed a water purchase agreement containing terms for Trinity to purchase water from the Martinez family. However, the water purchase agreement did not obligate Trinity to purchase water from the Martinez family for the drilling operation.

In December 2018, Paul informed Johnson that a landman with Trinity told him it is more feasible to get water from a different location than the Martinez family water well. In March 2019, Johnson sent Paul an email stating he tried to convince Trinity to purchase water from the Martinez family but was told that the landowner to the North, presumably whose land where the oil and gas wells were drilled, was not cooperating and the Martinez family's water well was not capable of producing the volume of water needed for fracking. Johnson waived all attorney's fees associated with the transaction and referred Paul to other law firms to determine whether he had any legal claims arising out of the transaction.

The Martinez family subsequently sued the Firm for negligence and gross negligence alleging legal malpractice for failure to draft a water purchase agreement that required Trinity to purchase water from the Martinez family for the oil and gas wells used to extract the Martinez family's minerals.[1] The lawsuit included causes of action for breach of fiduciary duty and violation of the Deceptive Trade Practices Act ("DTPA") allegedly arising from the same transaction.[2]

Relevant to this appeal, the Firm filed a no-evidence motion for summary judgment asserting the Martinez family is unable to show liability for its professional negligence claims

---

[1] The negligence cause of action alleged a conflict of interest caused inadequate representation. The gross negligence cause of action alleged Johnson's failure to include language requiring Trinity to purchase water from the Martinez family fell below the standard of care Johnson owed as the Martinez family's attorney.

[2] The original petition also included a claim for negligent misrepresentation; however, this claim was later dropped in the Martinez family's first amended petition.

because there is no evidence the Firm breached a duty and there is no evidence that any alleged breach caused damages to the Martinez family. The Martinez family filed a response the day before the summary judgment hearing. The trial court granted the no-evidence summary judgment motion. The Firm subsequently filed a pretrial motion for judgment under Rule 166(g) of the Texas Rules of Civil Procedure claiming, among other things, that the Martinez family's remaining claims are nothing more than fractured legal malpractice claims couched as DTPA and breach of fiduciary duty claims. Because the DTPA and breach of fiduciary duty claims are improperly fractured legal malpractice claims—and summary judgment has already been granted on the legal malpractice claims—the Firm argued it was entitled to judgment as a matter of law on those remaining claims. The trial court granted the Firm's Rule 166(g) motion for judgment as a matter of law on the Martinez family's remaining DTPA and breach of fiduciary duty claims. The Martinez family appeals.

## DISCUSSION

In its first issue, the Martinez family argues the trial court erred when it granted the Firm's Rule 166(g) motion because several genuine issues of material fact preclude judgment as a matter of law on the Martinez family's DTPA and breach of fiduciary duty claims. The Firm argues it does not matter if genuine issues of material fact exist because the Martinez family is precluded from fracturing its legal malpractice claims and casting them as DTPA and breach of fiduciary duty claims.

In its second issue, the Martinez family argues the trial court erred when it granted the Firm's no-evidence motion for summary judgment because it presented more than a scintilla of evidence to raise genuine issues of material fact on its negligence claims. The Firm argues the

trial court properly granted its no-evidence summary judgment motion because the Martinez family failed to file a timely response.

We address the Martinez family's second issue first.

### SUMMARY JUDGMENT: NEGLIGENCE AND GROSS NEGLIGENCE

"If a party moves for a no-evidence summary judgment, the nonmovant must file a response sufficient to raise a genuine issue of material fact." *BP Am. Prod. Co. v. Zaffirini*, 419 S.W.3d 485, 509 (Tex. App.—San Antonio 2013, pet. denied) (citing TEX. R. CIV. P. 166a(i)). "To have its response considered, the nonmovant must file the response 'not later than seven days prior to the day of hearing,' and may not file a response after the deadline 'except on leave of court.'" *Zaffirini*, 419 S.W.3d at 509 (alteration omitted) (quoting TEX. R. CIV. P. 166a(c)); *see also B.C. v. Steak N Shake Operations, Inc.*, 598 S.W.3d 256, 259 (Tex. 2020) (alteration omitted) ("A response to a no-evidence summary-judgment motion, including any evidence opposing the motion, is due seven days before the summary-judgment hearing [and] . . . must be timely filed except on leave of court."). We presume the trial court did not consider a late-filed response unless the record affirmatively indicates that the trial court granted leave to file the response. *Zaffirini*, 419 S.W.3d at 509; *see also B.C.*, 598 S.W.3d at 259 (alterations omitted) ("Where nothing appears of record to indicate that late filing of a summary judgment response was with leave of court, it is presumed the trial court did not consider the response."). "If the nonmovant fails to timely file a response, the record does not affirmatively show the trial court granted leave to file [the response late], and the [summary judgment] motion meets the requirements of Rule 166a(i), the trial court must grant the no-evidence motion" for summary judgment. *Zaffirini*, 419 S.W.3d at 509.

Here, the Firm filed its no-evidence motion for summary judgment on April 9, 2024. The motion meets the requirements under Rule 166a(i) because it asserts there is no evidence that the Firm breached any duty owed to the Martinez family, and, if there was a breach of duty, there is no evidence the breach caused damages. Although the appellate record does not include the transcript of the summary judgment hearing, the trial court's order indicates the hearing occurred on May 1, 2024. Thus, the Martinez family's summary judgment response was due no later than April 24, 2024. *See* TEX. R. CIV. P. 166a(c) (providing a summary judgment response and evidence must be filed no later than seven days prior to the day of the summary judgment hearing "[e]xcept on leave of court"). However, the Martinez family did not file its summary judgment response until April 30, 2024, the day before the summary judgment hearing. It is clear the trial court did not grant leave to file the response late and did not consider the late-filed response because the trial court's order granting the no-evidence summary judgment expressly states:

> [The Martinez family] filed an untimely response on April 30, 2024, the day before the hearing, without filing a motion for leave to file a late response or a motion for continuance of the hearing. Therefore, [the Martinez family's] response was not considered.

The Firm's no-evidence motion for summary judgment meets the no-evidence requirements, and the Martinez family was required to file a timely response presenting more than a scintilla of evidence that raised a genuine issue of material fact on each of the negligence and gross negligence elements. *See Zaffirini*, 419 S.W.3d at 509. Because the trial court did not grant leave for the Martinez family to file a late response, and the record does not affirmatively indicate that the trial court considered the late-filed response, the Martinez family failed to timely produce summary judgment evidence raising a genuine issue of material fact.[3] *See id.* Thus, we cannot conclude the trial court erred when it granted the Firm's no-evidence motion for summary

---

[3] The Martinez family does not challenge the trial court's refusal to consider its late-filed response.

judgment. *See Cerda v. Crossroads Mall Partners, Ltd.*, No. 04-24-00274-CV, 2025 WL 611595, at *1–2 (Tex. App.—San Antonio Feb. 26, 2025, no pet.).

Accordingly, the Martinez family's second issue is overruled.

### RULE 166(g): DTPA AND BREACH OF FIDUCIARY DUTY

The Firm argued in its Rule 166(g) motion that the Martinez family's breach of fiduciary duty and DTPA claims are fractured legal malpractice claims. In other words, the Firm contends the Martinez family improperly pled its legal malpractice claims as breach of fiduciary duty and DTPA claims. To resolve the Martinez family's first issue, we must determine whether the anti-fracturing doctrine precludes the Martinez family's DTPA and breach of fiduciary duty claims as a matter of law.

"Under Rule 166, a trial court can convene a pretrial conference 'to assist in the disposition of the case without undue expense or burden to the parties.'" *CC&T Enters., LLC v. Tex. 1031 Exch. Co.*, 673 S.W.3d 631, 640 (Tex. App.—San Antonio 2023, no pet.) (quoting TEX. R. CIV. P. 166). "Subsection (g) of the rule provides that at the conference, the trial court may consider 'the identification of legal matters to be ruled on or decided by the court.'" *CC&T Enters.*, 673 S.W.3d at 640 (alterations omitted) (quoting TEX. R. CIV. P. 166(g)). "Whether allegations against a lawyer, labeled as breach of fiduciary duty, fraud, or some other cause of action, are actually claims for professional negligence or something else is a question of law to be determined by the court." *Riverwalk CY Hotel Partners, Ltd. v. Akin Gump Strauss Hauer & Feld, LLP*, 391 S.W.3d 229, 236 (Tex. App.—San Antonio 2012, no pet.). Because the question of whether the anti-fracturing rule precludes the Martinez family's DTPA and breach of fiduciary duty claims is a question of law to be determined by the court, the issue was properly raised in the Firm's Rule 166(g) motion. *See CC&T Enters.*, 673 S.W.3d at 641 (concluding it was appropriate to determine

issues that were to be decided as a matter of law in a Rule 166(g) pretrial conference). "If a trial court's order granting a Rule 166(g) motion disposes of the plaintiff's claims, 'the order is akin to a summary judgment or directed verdict, and review is de novo.'" *Id.* (quoting *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018)).

Under the anti-fracturing rule, plaintiffs in professional negligence claims are not permitted to convert what are actually negligence claims into other claims, such as DTPA and breach of fiduciary duty claims, in order to gain a litigation advantage. *Pitts v. Rivas*, 709 S.W.3d 517, 523,524 (Tex. 2025) ("The anti-fracturing rule appropriately seeks to ensure that professional malpractice *allegations* are litigated under the law applicable to professional malpractice *claims*.").

Although a plaintiff may artfully recast a professional negligence allegation as some other claim, courts "must look not merely to the labels chosen by the plaintiff but instead to the gravamen of the facts alleged to determine how to treat the claim." *Id.* at 523. "Under the anti-fracturing rule, if the crux or gravamen of the plaintiff's claim is a complaint about the quality of professional services provided by the defendant, then the claim will be treated as one for professional negligence even if the petition also attempts to repackage the allegations under the banner of additional claims." *Id.* at 524, 525 ("[T]he rule prohibits plaintiffs from [casting their allegations as other causes of action] when the gravamen of the allegations is that the defendant failed to exercise the requisite degree of care or skill in the provision of professional services."); *see also B.C. v. Steak N Shake Operations, Inc.*, 512 S.W.3d 276, 283 (Tex. 2017) ("The gravamen of a claim is its true nature, as opposed to what is simply alleged or artfully pled, allowing courts to determine the rights and liabilities of the involved parties."). Stated differently, if the crux of the client's complaint is that "the professional failed to exercise the degree of care, skill, or diligence that professionals of ordinary skill and knowledge would exercise, the anti-fracturing rule requires

the claim to be litigated as one for professional negligence, and the plaintiff may not re-label the allegations under a different claim to obtain a litigation advantage." *Pitts*, 709 S.W.3d at 524 (citing *Riverwalk CY Hotel Partners*, 391 S.W.3d at 236).

"To avoid application of the rule, the plaintiff must do more than merely reassert the same claim for legal malpractice under an alternative label." *Pitts*, 709 S.W.3d at 524 (internal quotation marks omitted). "The plaintiff must present a claim that goes beyond what traditionally has been characterized as legal malpractice." *Id.* On the other hand, "[i]f a lawyer's error or mistake is actionable, it should give rise to a cause of action for legal malpractice with one set of issues which inquire if the conduct or omission occurred, if that conduct or omission was malpractice and if so, subsequent issues on causation and damages." *Id.* (quoting *Sledge v. Alsup*, 759 S.W.2d 1, 2 (Tex. App.—El Paso 1988, no writ). "Nothing is to be gained [by] fracturing that cause of action into three or four different claims and sets of special issues." *Id.*

Here, the gravamen of the Martinez family's claims—whether labeled negligence, DTPA, or breach of fiduciary duty—is that Johnson neglected to include a provision in the water purchase agreement requiring Trinity to purchase water from the Martinez family.

*A. DTPA Claim*

"The anti-fracturing rule does not ask courts to blur the distinction between negligent conduct and deceptive conduct." *Pitts*, 709 S.W.3d at 525. "Instead, it requires courts to examine whether the plaintiff has blurred such distinctions by framing its professional negligence allegations as something more in order to gain a litigation advantage." *Id.* The Martinez family's allegations of DTPA violations and the harm caused by the alleged violations track its professional negligence claims. In its gross negligence cause of action, the Martinez family asserts the Firm's "trade practices and representations of excellence and expertise were knowingly false and

deceptive" because Johnson negligently negotiated the water purchase agreement. In its DTPA cause of action, the Martinez family asserts Johnson "failed to communicate to [the Martinez family] that the [w]ater [a]greement was not binding or exclusive or mandatory." The petition further asserts that "[d]ue to [Johnson's] lack of expertise and knowledge and experience, he knowingly did not ask Trinity for an exclusive agreement, never followed up on Trinity's pre-agreement statements that Trinity would in fact buy [the Martinez family's] water, and let Trinity get away with what became an illusory agreement." The Martinez family's live pleading alleges Johnson violated the DTPA because he purportedly acted deceptively by holding himself out as an expert in natural resources law when he allegedly is not because he had not heard of or did not include the mandatory water purchase provision in the agreement. The petition also alleges Johnson acted deceptively by neglecting to inform the Martinez family that the water purchase agreement he drafted did not require Trinity to purchase the Martinez family's water.

"A cause of action arising out of bad legal advice or improper representation is legal malpractice." *Greathouse v. McConnell*, 982 S.W.2d 165, 172 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). The DTPA allegations here all sound in negligence because they go to the Firm's competence and, ultimately, the adequacy of its legal services. *See Beck v. Law Offices of Edwin J. (Ted) Terry, Jr., P.C.*, 284 S.W.3d 416, 439 (Tex. App.—Austin 2009, no pet.) (holding the appellants' complaint that their attorney had undisclosed alcohol and substance abuse addictions sounded in negligence rather than DTPA because the allegation went to the attorney's competence and the adequacy of the legal services provided); *Greathouse*, 982 S.W.2d at 172

(holding a complaint that a lawyer misrepresented legal services would be of competent quality constituted a negligence claim, not a DTPA claim).[4]

The DTPA damages pled by the Martinez family are for the lost revenue from the water purchase agreement. These are the same damages that arise from Johnson's alleged legal malpractice. The Martinez family did not plead any damages or allege any injury beyond that which it incurred from the alleged failure to include the mandatory water purchasing provision in the agreement.

We conclude the Martinez family blurred the distinction between negligent conduct and deceptive conduct by artfully pleading Johnson's alleged misrepresentation of his professional skills as a DTPA claim when the real claim is for Johnson's alleged error or mistake when he failed to include language in the water purchase agreement that required Trinity to purchase its water from the Martinez family. As such, the Martinez family improperly fractured its legal malpractice claim into a DTPA claim.

## B. Breach of Fiduciary Duty

The Martinez family's breach of fiduciary duty claim also tracks its negligence claim. In both claims, the Martinez family asserts the Firm did not adequately represent the Martinez family because it had a conflict of interest. Although not clear from the petition, the Firm's Rule 166(g) motion clarifies that the landowner who did sell water to Trinity initially came to the Firm seeking representation to negotiate his water agreement with Trinity. It is undisputed that the landowner sought to engage the Firm approximately one month after the Martinez family signed its water

---

[4] Without explaining how, the Martinez family's petition also states Johnson's actions were unconscionable, presumably alleging Johnson took advantage of the Martinez family's lack of knowledge, ability, experience, or capacity to a grossly unfair degree. The same allegation was made against a lawyer in *Greathouse v. McConnell*, when the lawyer allegedly provided inadequate representation. 982 S.W.2d 165, 172 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). The *Greathouse* court concluded this allegation amounted to a claim for legal malpractice and not a separate cause of action under the DTPA. *Id.*

agreement with Trinity. When the Firm discovered the conflict of interest, it withdrew representation of the other landowner and recommended the Martinez family seek new counsel.

First, the crux of the breach of fiduciary duty claim is that the Martinez family lost revenue from selling water to Trinity because the Firm inadequately represented the Martinez family to negotiate a water agreement that required Trinity to purchase the Martinez family's water. The only damages alleged are those that stem from the lost revenues from the sale of water. We have already said this type of complaint sounds in negligence because it goes to the Firm's competency and the adequacy of the legal services rendered. *See Beck*, 284 S.W.3d at 431–32.

Second, "[t]o distinguish independently actionable breach-of-fiduciary-duty claims against lawyers from those that sound in negligence, Texas courts have generally held that a breach-of-fiduciary-duty claim focuses on 'whether an attorney obtained an improper benefit from representing the client,' while a negligence claim focuses on whether an attorney represented a client with the requisite level of skill." *Id.* at 429 (quoting *Murphy v. Gruber*, 241 S.W.3d 689, 693 (Tex. App.—Dallas 2007, pet. denied)); *see also Riverwalk CY Hotel Partners*, 391 S.W.3d at 236 ("[I]f the claim focuses on an attorney obtaining an improper benefit, as opposed to the attorney failing to adequately represent the client, then the claim may appropriately be classified as a breach of fiduciary duty claim."); *Duerr v. Brown*, 262 S.W.3d 63, 71 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ("A legal malpractice claim focuses on whether an attorney represented a client with the requisite level of skill, while a breach of fiduciary duty claim encompasses whether an attorney obtained an improper benefit from the representation."). "A breach of fiduciary duty occurs when an attorney, among other things, subordinates his client's interest to his own, retains the client's funds, engages in self-dealing, improperly uses client confidence, fails to disclose conflicts of interest, or makes misrepresentations to achieve these ends." *Riverwalk*

*CY Hotel Partners*, 391 S.W.3d at 236. "Unlike conflicts of interest between jointly represented clients, the types of conflicts of interest which could give rise to a breach of fiduciary duty are those in which the lawyer has a direct pecuniary interest in the litigation that is adverse to the client, and the attorney pursues his own interest to the client's detriment." *Id.*

The record is devoid of any evidence that Johnson or the Firm had or pursued any pecuniary interest that was adverse to the Martinez family.[5] Thus, the type of conflict that might give rise to a separate actionable breach of fiduciary duty does not exist in this case. Because the Martinez family's entire petition focuses on whether Johnson represented the Martinez family with the requisite level of skill rather than whether Johnson or the Firm received an improper benefit from the representation, the breach of fiduciary duty claim is nothing more than a fractured legal malpractice claim. *See Beck*, 284 S.W.3d at 429.

Finally, the Martinez family's breach of fiduciary duty claim only alleges that the Firm breached its fiduciary duty because it provided inadequate representation due to a conflict of interest. As mentioned above, the Firm's Rule 166(g) motion asserted the landowner who sold water to Trinity initially sought the Firm's services to negotiate the terms of his water agreement with Trinity a month after the Martinez family's water agreement was executed. However, the Firm ultimately referred the landowner to another law firm because of the potential conflict of interest. The Firm's Rule 166(g) motion asserted no evidence exists to support the Martinez family's allegation that the Firm represented two different clients with adverse interests at the same time. Rather than respond to this allegation, the Martinez family argued in its response that Johnson's representation fell below the standard of care because he did not "advocate for a

---

[5] The Firm waived its fee for legal services provided to the Martinez family.

mandatory water use agreement." Again, this is an allegation of professional negligence, not an independent cause of action for breach of fiduciary duty.

For these reasons, we conclude the Martinez family's DTPA and breach of fiduciary duty claims were improperly fractured professional negligence claims. Therefore, the trial court did not err when it ruled the DTPA and breach of fiduciary duty claims were disallowed as a matter of law.

Accordingly, the Martinez family's first issue is overruled.

### CONCLUSION

We affirm the trial court's judgment.

Irene Rios, Justice