02-09-376-CV
















 

 

 

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

NO. 2-09-376-CV

 

 

PATRICK
 GALLAGHER AND                            
                               APPELLANTS
 LOIS GALLAGHER                                                                                                

 

V.

 

A. BRUCE WILSON                                                                              
 
 APPELLEE

 

 

------------

 

FROM COUNTY COURT AT
LAW NO. 1 OF TARRANT COUNTY

 

------------

 

MEMORANDUM OPINION[1]

 

------------

I. 
Introduction

          This is a summary judgment
appeal.  Appellee A. Bruce Wilson filed
no-evidence and traditional motions for summary judgment.  The trial court granted both motions without
stating a basis for its rulings.  Appellants Patrick Gallagher and his wife Lois
Gallagher perfected this appeal, raising two issues, one challenging the
no-evidence summary judgment and one challenging the traditional summary
judgment.  For the reasons set forth
below, we will affirm the trial court’s summary judgments in favor of Wilson.

II.  Factual
and Procedural Background

          Patrick and Lois sued Wilson, an
attorney, for legal malpractice and for breach of fiduciary duty.  Patrick and Lois’s claims against Wilson,
according to their Third Amended Original Petition, involve actions Wilson took
while representing Patrick in a 2003 probate matter in connection with Patrick’s
service as the executor of his mother’s estate (the 2003 Probate Matter) and in
a 2005 lawsuit filed by Patrick’s brother, Garrett, stemming from the probate
of their mother’s estate (the 2005 Litigation).

A.  
The 2003
Probate Matter

          Patrick’s mother, Neva R. Gallagher,
died in 2003, and under the terms of her will, Patrick was appointed independent
executor of her estate.  The will also
specified that her two sons, Patrick and Garrett, were to equally share the assets
of her estate.  The estate included two
parcels of real estate titled in Neva’s name, the Van Deman Property and the
Trinity Vista Property.  According to
Patrick and Lois, although the Trinity Vista Property was in Neva’s name,
Patrick had actually purchased it and made all payments on the property himself;
he put it in his mother’s name “because [he] thought it would expedite her
hospice care.”

          Patrick retained Wilson to assist in
the probate of his mother’s estate. Acting on Wilson’s advice, Patrick listed
the Trinity Vista Property as part of the estate on several sworn documents
filed with the probate court without indicating that the property actually
belonged to Patrick or that it was subject to a significant mortgage debt.  Patrick informed Wilson of his concerns with
how the Trinity Vista Property was listed, but ultimately, acting on Wilson’s
advice and instructions, he signed the sworn documents “even though he did not
believe that the information was accurate or complete.”

          Later in 2003, Patrick, acting as
independent executor of the estate, transferred the Trinity Vista Property to
himself and his wife Lois.  He also paid Garrett
$10,000 as a partial distribution of the estate and advised Garrett that he
would receive another distribution when Patrick sold the Van Deman Property.

B.  
The
2005 Litigation

          In 2005, Garrett filed suit against
Patrick and Lois, claiming that Patrick had breached his duties as independent
executor by transferring the Trinity Vista Property to himself and Lois without
notifying Garrett and without Garrett’s consent.  Pointing to the inventory and closing
affidavit for his mother’s estate, which listed the Trinity Vista Property as
part of the estate, Garrett asserted that the Trinity Vista Property should
have passed in equal shares to himself and Patrick.

Patrick
and Lois hired Wilson to defend them in the 2005 Litigation.  During discovery, Garrett served requests for
admissions on Patrick and Lois, and Patrick gave Wilson hand-written instructions
on how the requests should be answered.  But Wilson failed to timely respond to the
requests for admissions, and they were deemed admitted.  Wilson did not notify Patrick and Lois of
these deemed admissions, but he sought and received the probate court’s permission
to withdraw the deemed admissions and to substitute answers to the requests.  Contrary to the hand-written answers to the requests
for admissions that Patrick had given Wilson, however, Wilson answered “Admitted”
to four requests––admitting that Patrick and Lois had never notified Garrett of
their intent to convey the Trinity Vista Property to themselves and that Garrett
did not receive compensation for his half interest in the property.

During
the 2005 Litigation, Wilson also advised Patrick and Lois that the sworn
documents filed in the 2003 Probate Matter, listing the Trinity Vista Property as
part of Neva’s estate, were binding on them and that, consequently, they should
negotiate a settlement with Garrett.  Relying
on Wilson’s advice, Patrick and Lois entered into a Rule 11 Agreement with Garrett
in which Garrett would receive seventy-five percent of the sale proceeds from
the Van Deman Property and in which Lois, who is a real estate agent, would be
prohibited from acting as a real estate agent in the sale of that property.

Patrick,
acting as executor of the estate, entered into a contract to sell the Van Deman
Property to a third person, but after Wilson unilaterally inserted into the
contract certain language about the Rule 11 Agreement, the buyer backed out of
the contract.  Patrick also negotiated a
sale of the Trinity Vista Property, and he requested that Wilson obtain a
release of the lis pendens that Garrett had filed against the property.[2]  Wilson failed to do so, and Patrick had to
pay Garrett an additional $3,500 in order to get a release of the lis pendens
so that Patrick could sell the Trinity Vista Property.

Garrett
ultimately filed a motion to dismiss his suit against Patrick and Lois with
prejudice based on the settlement agreement between the parties.  The trial court signed an order dismissing Garrett’s
suit with prejudice on May 31, 2006. On November 8, 2006, Patrick filed an
amended closing affidavit in the 2003 Probate Matter, reflecting that all
assets of the estate had been distributed.

C.  
Patrick
and Lois’s Suit Against Wilson

On
June 2, 2008, Patrick and Lois filed suit against Wilson for legal malpractice
and breach of fiduciary duty based on actions Wilson took during both the 2003
Probate Matter and the 2005 Litigation.  Specifically regarding the 2003 Probate
Matter, they complained of Wilson’s advice to list the Trinity Vista Property
as belonging to the estate in sworn documents filed with the probate court
without any indication (1) that the property actually belonged to Patrick and
Lois and (2) that the property was subject to a mortgage debt.  Specifically regarding the 2005 Litigation,
Patrick and Lois complained of (1) Wilson’s advice to enter into an unfavorable
settlement agreement with Garrett, (2) Wilson’s failure to timely respond to
requests for admissions, (3) Wilson’s insertion of the Rule 11 Agreement
language into the contract for sale of the Van Deman Property, and (4) Wilson’s
failure to obtain a release of the lis pendens on the Trinity Vista Property.

III.  Standards
of Review

A.  No-Evidence Summary Judgment

          After an adequate time for discovery,
the party without the burden of proof may, without presenting evidence, move
for summary judgment on the ground that there is no evidence to support an
essential element of the nonmovant’s claim or defense.  Tex. R. Civ. P. 166a(i).  The motion must specifically state the
elements for which there is no evidence. 
Id.; Timpte Indus., Inc. v. Gish, 286 S.W.3d 306, 310
(Tex. 2009).  The trial court must grant
the motion unless the nonmovant produces summary judgment evidence that raises
a genuine issue of material fact.  See
Tex. R. Civ. P. 166a(i) & cmt.; Hamilton v. Wilson, 249 S.W.3d 425,
426 (Tex. 2008).

          When reviewing a no-evidence summary
judgment, we examine the entire record in the light most favorable to the nonmovant,
indulging every reasonable inference and resolving any doubts against the
motion.  Sudan v. Sudan, 199
S.W.3d 291, 292 (Tex. 2006).  We review a
no-evidence summary judgment for evidence that would enable reasonable and
fair-minded jurors to differ in their conclusions.  Hamilton, 249 S.W.3d at 426 (citing City
of Keller v. Wilson, 168 S.W.3d 802, 822 (Tex. 2005)).  We credit evidence favorable to the nonmovant
if reasonable jurors could, and we disregard evidence contrary to the nonmovant
unless reasonable jurors could not.  Timpte
Indus., Inc., 286 S.W.3d at 310 (quoting Mack Trucks, Inc. v. Tamez,
206 S.W.3d 572, 582 (Tex. 2006)).  If the
nonmovant brings forward more than a scintilla of probative evidence that
raises a genuine issue of material fact, then a no-evidence summary judgment is
not proper.  Smith v. O’Donnell, 288
S.W.3d 417, 424 (Tex. 2009).

B.  Traditional Summary Judgment

          In a summary judgment case, the issue
on appeal is whether the movant met the summary judgment burden by establishing
that no genuine issue of material fact exists and that the movant is entitled
to judgment as a matter of law.  Tex. R.
Civ. P. 166a(c); Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,
289 S.W.3d 844, 848 (Tex. 2009).  We
review a summary judgment de novo.  Mann
Frankfort, 289 S.W.3d at 848.

          We take as true all evidence favorable
to the nonmovant, and we indulge every reasonable inference and resolve any
doubts in the nonmovant’s favor. 
20801, Inc. v. Parker, 249 S.W.3d 392, 399 (Tex. 2008); Sw. Elec.
Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002).  We consider the evidence presented in the
light most favorable to the nonmovant, crediting evidence favorable to the
nonmovant if reasonable jurors could, and disregarding evidence contrary to the
nonmovant unless reasonable jurors could not. 
Mann Frankfort, 289 S.W.3d at 848.  We must consider whether reasonable and
fair-minded jurors could differ in their conclusions in light of all of the
evidence presented.  See Wal-Mart
Stores, Inc. v. Spates, 186 S.W.3d 566, 568 (Tex. 2006); City of Keller,
168 S.W.3d at 822–24.  The summary
judgment will be affirmed only if the record establishes that the movant has
conclusively proved all essential elements of the movant’s defense as a matter
of law.  City of Houston v. Clear
Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).

IV.  Legal
Malpractice

          Concerning Patrick and Lois’s legal
malpractice claim, Wilson’s no-evidence summary judgment motion claimed that no
evidence existed on the elements of breach of duty, proximate cause, or
damages.  Wilson argues that expert
testimony was required to establish these elements.  Because Patrick and Lois’s summary judgment
evidence did not include any expert report or affidavit, Wilson argues that the
trial court properly granted his no-evidence summary judgment motion.  Patrick and Lois argue that expert testimony
was not required to support their claims because Wilson’s errors were “plainly
within the understanding and common knowledge of laymen.”

A.  
Law
on Legal Malpractice

Legal
malpractice cases in Texas are based on negligence.  Barcelo
v. Elliott, 923 S.W.2d 575, 579 (Tex. 1996); Delp v. Douglas, 948 S.W.2d 483, 495 (Tex. App.––Fort Worth 1997), rev’d in part on other grounds, 987
S.W.2d 879 (Tex. 1999).  To prevail on a
legal malpractice claim, a plaintiff must show “‘that (1) the attorney owed the
plaintiff a duty, (2) the attorney breached that duty, (3) the breach
proximately caused the plaintiff’s injuries, and (4) damages occurred.’”  Alexander v. Turtur & Assocs., Inc.,
146 S.W.3d 113, 117 (Tex. 2004) (quoting Peeler v. Hughes & Luce, 909
S.W.2d 494, 496 (Tex.1995)).

A
plaintiff must generally present expert testimony to establish the breach and
causation elements of a legal malpractice claim.  Alexander, 146 S.W.3d at 117, 119–20.  Breach of the standard of care and causation
are separate inquiries, and an abundance of evidence as to one cannot
substitute for a deficiency of evidence as to the other.  Id. at
119.

Regarding
the breach element, attorneys are held to the standard of care that a
reasonably prudent attorney would exercise, and expert testimony is typically needed
to demonstrate that standard of skill and noncompliance with that standard.  Longaker
v. Evans, 32 S.W.3d 725, 735 (Tex. App.––San Antonio 2000, pet. withdrawn)
(en banc op. on reh’g); Jatoi v. Decker,
Jones, McMackin, Hall & Bates, 955 S.W.2d 430, 434 (Tex. App.––Fort
Worth 1997, writ denied); Hall v.
Rutherford, 911 S.W.2d 422, 424 (Tex. App.––San Antonio 1995, writ denied).

[A]n attorney can
commit legal malpractice by giving an erroneous legal opinion or erroneous
advice, by failing to give any advice or opinion when legally obliged to do so,
by disobeying a client’s lawful instruction, by taking an action when not instructed
by the client to do so, by delaying or failing to handle a matter entrusted to
the attorney’s care by the client, or by not using an attorney’s ordinary care
in preparing, managing, and presenting litigation that affects the client’s
interests.

 

Kimleco Petroleum, Inc. v. Morrison
& Shelton, 91 S.W.3d 921, 923–24 (Tex. App.––Fort
Worth 2002, pet. denied) (citing Zidell
v. Bird, 692 S.W.2d 550, 553 (Tex. App.––Austin 1985, no writ)).  Expert testimony is not required if the
attorney’s lack of care and skill is so obvious that the trier of fact can find
negligence as a matter of common knowledge.  James V.
Mazuca and Assocs. v. Schumann, 82 S.W.3d 90, 97 (Tex. App.––San Antonio 2002,
pet. denied).  The most common example of
a case requiring no expert testimony is one in which an attorney allows the
statute of limitations to run on a client’s claim.  Id.

B.  
Expert
Testimony Was Required

Here,
the majority of Wilson’s alleged breaches were not within a jury’s common
understanding.  Whether Wilson was
negligent and breached his duty of care in advising Patrick and Lois to list real
property as part of Neva’s estate when Neva was, in fact, the listed owner of
that property and advising them to list that property at full value without indicating
that Patrick claimed to be the actual owner and made all payments on the
property himself is not a matter of common knowledge.  Similarly, whether advising Patrick and Lois
to enter into the settlement agreement with Garrett, whether inserting language
about the settlement agreement into the contract for sale of the Van Deman
Property, and whether failing to obtain a release of the lis pendens on the
Trinity Vista Property constituted negligence and breaches of the duty of care
Wilson owed to Patrick and Lois are not matters of common knowledge.  These allegations are substantially more
complex than, for example, allowing the statute of limitations to run and
required expert testimony to establish a breach of the requisite standard of
care.  See, e.g., Longaker, 32
S.W.3d at 735 (requiring expert testimony to establish breach element when
client alleged malpractice based on attorney’s advice on closing a trust); see also Francisco v. Foret, No. 05-01-00783-CV, 2002 WL 535455, at *2 (Tex.
App.––Dallas Apr. 11, 2002, pet. denied) (requiring expert testimony of an
attorney to establish breach of standard of care regarding malpractice claim
premised on attorney’s alleged failure to understand medical malpractice law,
mishandling of the case, and misstatements of the applicable law).

The
only alleged breach by Wilson that remains is his failure to timely respond to
requests for admissions.  Failing to
timely respond to discovery is less complex than the above alleged breaches and
more analogous to allowing a statute of limitation to run, but Wilson
successfully obtained the probate court’s permission to withdraw the deemed
admissions and substituted answers to those requests.  Consequently, Wilson’s failure to timely
respond to requests for admissions could not have caused any harm to Patrick
and Lois.  See Alexander, 146 S.W.3d at 117 (requiring proof that
breach caused plaintiff’s injuries and that damages occurred).

Patrick
and Lois further claim that, even though Wilson successfully substituted
answers to the deemed admissions, he “failed to faithfully adhere to the
instruction provided by [Patrick] as to how the Requests should be answered”
and instead answered, “Admitted” to several requests despite Patrick’s instructions
otherwise.  But Patrick and Lois failed
to present any evidence to show a causal link between Wilson admitting to four
requests for admissions and Patrick and Lois entering into the settlement
agreement with Garrett.  See id.; see also Cantu v. Horany, 195 S.W.3d 867, 873 (Tex. App.––Dallas
2006, no pet.) (requiring expert testimony to show that client would have
prevailed in litigation if attorney had properly sued responsible party).  Any causal relationship between Wilson
admitting several requests and Patrick and Lois ultimately settling the lawsuit
with Garrett on unfavorable terms is not an obvious matter of common knowledge.
 Cf.
Streber v. Hunter, 221 F.3d 701, 726–27
(5th Cir. 2000) (holding expert testimony on causation not required when expert
testified that attorney’s tax advice was incorrect, thus establishing
negligence and breach, and client testified that attorney’s advice not to
settle tax dispute caused her specific financial losses); Delp, 948 S.W.2d at 495 (holding expert testimony on causation not
required when expert testimony established breach and client’s testimony
established that his reliance on attorney’s advice caused him to lose business
interest and file for bankruptcy).

          Examining the entire record in the
light most favorable to Patrick and Lois, as the nonmovants, indulging every
reasonable inference and resolving any doubts against Wilson’s no-evidence
motion, we hold that Patrick and Lois failed to bring forward a scintilla of
probative evidence that raises a genuine issue of material fact on the breach
and causation elements of their legal malpractice cause of action.  See Smith, 288 S.W.3d at 424; Sudan,
199 S.W.3d at 292.  Consequently, we hold
that the trial court did not err by granting Wilson’s no-evidence summary
judgment motion on Patrick and Lois’s legal malpractice cause of action.  We overrule that portion of Patrick and Lois’s
first issue addressing their legal malpractice claim.

V.  Breach of
Fiduciary Duty

Wilson’s
traditional summary judgment motion claimed that the Gallagher’s breach of
fiduciary duty claim was improper because it was simply a restatement of their
legal malpractice claim.

A.  
Law
on Fracturing Breach of Fiduciary Duty Claims

Generally,
Texas courts do not allow plaintiffs to convert what are really negligence
claims into claims for fraud, breach of contract, breach of fiduciary duty, or
violation of the DTPA “because the ‘real issue remains one of whether the
professional exercised that degree of care, skill, and diligence that
professionals of ordinary skill and knowledge commonly possess and exercise.’”  Kimleco
Petroleum, Inc., 91 S.W.3d at 924 (quoting Averitt v. PriceWaterhouseCoopers L.L.P., 89 S.W.3d 330, 333 (Tex. App.––Fort
Worth, 2002, no pet.)).  The focus of
breach of fiduciary duty is whether an attorney obtained an improper benefit
from representing a client, while the focus of a legal malpractice claim is
whether an attorney adequately represented a client.  See id.  Breach of fiduciary duty often involves the
attorney’s failing to disclose conflicts of interest, failing to deliver funds
belonging to the client, improperly using client confidences, or engaging in
self-dealing.  Aiken v. Hancock, 115 S.W.3d 26, 28 (Tex. App.––San Antonio 2003,
pet. denied); Goffney v. Rabson, 56
S.W.3d 186, 193 (Tex. App.––Houston [14th Dist.] 2001, pet. denied). Regardless
of the theory a plaintiff pleads, as long as the crux of the complaint is that
the plaintiff’s attorney did not provide adequate legal representation, the
claim is one for legal malpractice.  See Greathouse v. McConnell, 982 S.W.2d
165, 172 (Tex. App.––Houston [1st Dist.] 1998, pet. denied).

B.  
Breach
of Fiduciary Duty Claims Improper

Here,
Patrick and Lois rely on the same conduct by Wilson for their breach of
fiduciary duty claim as they do for their legal malpractice claim.  They claim that Wilson breached his fiduciary
duty by giving Patrick bad advice, failing to respond to discovery, failing to
seek a release of a lis pendens on
property, and improperly adding language into a contract for sale of the
property.  Patrick and Lois further
allege that Wilson’s “insistence on reaching a settlement with Garrett was
based, at least in part, on Wilson’s need to conceal his failure to respond to
the requests for admissions and on Wilson’s need to conceal the possible
criminal repercussions of the sworn-to inventories he directed [Patrick] to
execute.”

But
Patrick and Lois’s allegations constitute claims for legal malpractice that do
not amount to self-dealing, deception, or express misrepresentations in the
course of Wilson’s representation sufficient to support a separate cause of action
for breach of fiduciary duty.  See, e.g., Newton v. Meade, 143 S.W.3d 571, 574 (Tex. App.––Dallas 2004, no
pet.) (explaining that a cause of action claiming bad legal advice or improper
representation is one for legal malpractice); Aiken, 115 S.W.3d at 29 (holding that allegations that lawyer
falsely represented that he and expert witness were prepared for trial and failed
to reveal that he and expert witness were, in fact, not prepared for trial did
not allege “self-dealing, deception, or express misrepresentations in [the
lawyer’s] legal representation” to support separate cause of action for breach
of fiduciary duty); Kimleco Petroleum,
Inc., 91 S.W.3d at 924 (holding that crux of claim that lawyer negligently
failed to timely designate expert witness and misled clients into believing
case was ready for trial stated claim for legal malpractice, not breach of
fiduciary duty); Goffney, 56 S.W.3d at
193–94 (holding that client’s allegation of breach of fiduciary duty against
lawyers was “no more than a claim for legal malpractice” because acts did not “amount
to self-dealing, deception, or misrepresentations”); Greathouse, 982 S.W.2d at 172–75 (holding that claims for breach of
fiduciary duty were actually claims for legal malpractice because they were
based on complaints that lawyer did not provide adequate legal representation).  Accordingly, we hold that the trial court
properly granted Wilson’s motion for traditional summary judgment with respect
to Patrick and Lois’s breach of fiduciary duty claim.  We overrule that portion of Patrick and Lois’s
second issue addressing their breach of fiduciary duty claim.

VI.  Conclusion

Having
determined that the trial court properly granted no-evidence summary judgment
for Wilson based on Patrick and Lois’s legal malpractice cause of action and
that the trial court properly granted traditional summary judgment for Wilson
based on Patrick and Lois’s remaining cause of action for breach of fiduciary
duty, we affirm the trial court’s summary judgments.  Because we affirm the trial court’s summary
judgments on these bases, we need not address Patrick and Lois’s challenges to
the other grounds on which the trial court’s summary judgments could have been
based.  See, e.g., Carr v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989)
(instructing us that if trial court’s summary judgment does not specify the
grounds upon which it is granted, we are to affirm the judgment if any of the
theories advanced are meritorious).

 

 

                                                          SUE
WALKER

                                                          JUSTICE

 

PANEL: 
DAUPHINOT, WALKER, and MEIER, JJ.

 

DELIVERED: 
August 26, 2010











[1]See Tex. R. App. P. 47.4.





[2]A lis pendens is a
document that prevents a party to litigation from transferring an interest in
real property until the litigation is resolved. 
See Tex. Prop. Code Ann. §
12.007 (Vernon Supp. 2009); World Savings
Bank, F.S.B. v. Gantt, 246 S.W.3d 299, 303 (Tex. App.––Houston [14th Dist.]
2008, no pet.).