**Opinion issued December 15, 2020**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-19-00186-CV

———————————

**MICHAEL SEAN SPRADLEY, Appellant**

**V.**

**MICHAEL E. ORSAK, LP, Appellee**

On Appeal from the County Court at Law No. 5
Fort Bend County, Texas
Trial Court Case No. 17-CCV-059304

## MEMORANDUM OPINION

Appellant, Michael Sean Spradley, challenges the trial court's judgment, entered after a jury trial, in favor of appellee, Michael E. Orsak, LP ("Orsak LP"), in Orsak LP's suit against Spradley to recover unpaid attorney's fees. Spradley also

challenges the trial court's summary judgments in favor of Orsak LP on Spradley's counterclaims for breach of fiduciary duty, legal malpractice, breach of contract, violations of the Texas Deceptive Trade Practices Act,[1] and fraud.  In four issues, Spradley challenges the legal sufficiency of the evidence supporting the jury's award of damages for unpaid fees, and he contends that the trial court erred in its charge to the jury and erred in granting summary judgment dismissing his counterclaims.

We reverse and remand in part and affirm in part.

## Background

In November 2015, Spradley's former spouse brought a modification suit against him, seeking conservatorship of their two children.  In December 2015, Spradley retained Orsak LP to represent him in defending against the suit.  Pursuant to a written "Employment Agreement" ("Agreement"), Orsak LP agreed to provide legal representation to Spradley in the modification suit, and Spradley agreed to pay Orsak LP a rate of $300.00 per hour for attorney work and $100.00 per hour for legal-assistant work, agreed to pay a retainer of $12,000.00, and agreed to pay expenses.  The Agreement further provided:

> While your concern for the cost involved is certainly appreciated, you must understand that it is impossible to predict accurately all that will be required to represent your legal interest in this matter, both present and future. Thus it is impossible to predict accurately, the total amount of the fee for professional services or the cost that may be involved in representing your interest. In this regard, it is fair that you be cautioned

---

[1]    *See* TEX. BUS. & COM. CODE §§ 17.46, 17.50.

2

at the outset that sometimes (and not infrequently) complexities develop in areas where they are not expected by a client. Sometimes because of extreme bitterness and hurt feelings, or because of substantial property interests, family law cases become unreasonably time-consuming. This firm has made no express or implied representations or guarantees concerning the outcome of your case or how long your case will take to complete.

. . . .

You hereby agree that, if you should, at any time become displeased or dissatisfied with any aspect whatsoever of this firm's legal representation, or if you should at any time have any serious question concerning that representation, you will immediately notify this firm of that fact in writing by certified mail, return receipt requested.

Thereafter, Orsak LP provided Spradley with various legal services, including conducting telephone conferences, reviewing and drafting correspondence and pleadings, submitting filings, performing legal research, participating in discovery, and preparing for and attending meetings, mediation, hearings, and a three-day bench trial in November 2016. After trial in the modification suit, but prior to the trial court's ruling, Spradley and his former spouse settled, and Spradley retained primary managing conservatorship of his children.

During the course of its year-long representation, Orsak LP billed Spradley a total of $80,935.23 in fees and expenses. Although Spradley fell behind in his payments, he paid Orsak LP a total of $34,500.00 and, according to Orsak LP, continued to give assurances that he would pay the firm in full. After the completion of the case, when Spradley failed or refused to pay Orsak LP the remaining $46,435.23, Orsak LP brought a breach-of-contract claim against Spradley.

Spradley then brought counterclaims against Orsak LP, alleging that it, through the attorney of the firm, Michael Orsak ("Orsak"), committed a breach of fiduciary duty, legal malpractice, breach of contract, violations of the DTPA, and fraud. With respect to all of his claims, Spradley alleged:

> This case is about an attorney violating the trust and confidence placed in him by his client. When [Spradley] faced the threat of losing custody of his children to his ex-wife, he retained the law firm of [Orsak LP] to represent him. [Orsak] used [Spradley's] fear of losing his children to engage in unethical billing practices such as billing more than is reasonable and customary, billing for work that was not actually performed, and billing for work he was expressly asked not to perform. When [Spradley] confronted [Orsak] about his unethical billing practices and threatened to fire [Orsak], [Orsak] intimated that he had a relationship with the presiding judge and that firing him would result in an adverse legal outcome for [Spradley]. Due to this threat and the fear of losing his children, [Spradley] did not fire [Orsak] and continued to be subjected to [Orsak's] unethical billing practices.

Spradley alleged that Orsak LP owed Spradley a fiduciary duty based on the parties' attorney-client relationship and that Orsak LP breached its fiduciary duty by failing to be "open and honest with Spradley as to its billing practices," by performing unnecessary work or work that Spradley instructed Orsak not to do, by "sacrificing Spradley's welfare to make a profit," by failing to make reasonable use of the confidence Spradley placed in Orsak LP, and by failing to act with the utmost good faith. Spradley sought disgorgement of Orsak LP's attorney's fees.

Spradley also alleged that Orsak LP committed legal malpractice because it breached its duty of care to Spradley "by billing in excess of what Spradley was

4

initially quoted, billing for unnecessary work, billing more time than it actually took to perform work, billing for work that Orsak was expressly asked not to perform, and billing for work not yet performed." And, as a result, Spradley sustained damages.

Spradley also alleged that Orsak LP breached the Agreement "by billing in excess of what Spradley was initially quoted, billing for unnecessary work, billing more time than it actually took to perform work, billing for work that Orsak was expressly asked not to perform, and billing for work not yet performed." And, as a result, Spradley sustained damages.

Spradley further alleged that Orsak LP violated the provisions of the DTPA because it "knowingly and intentionally made material representations regarding the cost of the services" to induce Spradley into retaining Orsak LP and then engaged in unconscionable billing practices, such as billing for unnecessary work, billing for more time than it actually took to perform the work, billing for work that Orsak was expressly asked not to perform, and billing for work not yet performed. And, Orsak engaged in unconscionable conduct by "leveraging his relationship with the presiding judge in Spradley's case in order to dissuade Spradley from firing Orsak and hiring a different attorney." As a result, Spradley sustained damages. And, Orsak LP committed fraud by representing that it could provide the necessary services for $15,000.00, although knowing that the actual cost would far exceed this

price. And, Orsak made material misrepresentations and omissions regarding the hours worked and the expenses incurred. As a result, Spradley sustained damages.

Orsak LP moved for a summary judgment on Spradley's counterclaims, asserting that, as discussed below, there was no evidence of certain elements of each of his claims. Orsak LP also raised objections to Spradley's summary-judgment evidence. In his summary-judgment response, Spradley argued that he presented more than a scintilla of probative evidence of each of the elements of each of his counterclaims and thus Orsak LP was not entitled to summary judgment on any of his claims. The trial court, without specifying its grounds, granted Orsak LP summary judgment on each of Spradley's counterclaims.

Orsak LP's breach-of-contract claim against Spradley was then tried to a jury. At trial, Michael Orsak testified that the firm's fees were customary for Fort Bend County and that his $300.00-per-hour rate was below that of a 40-plus-year trial lawyer in the area. He testified that the firm performed the legal work necessary, as agreed under the terms of the Agreement, to achieve the desired result and that Spradley breached the Agreement by not paying as agreed after the work was performed. He asserted that Spradley did not voice any issues with the invoices until after the case was completed. In January 2017, Spradley sent Orsak an email, detailing seventeen complaints about the fees. Orsak testified that, although he met with Spradley to discuss the concerns, Spradley was not satisfied. Orsak LP's legal

6

secretary, Joan Noto, testified regarding the invoices to Spradley and how they were calculated. The trial court admitted the invoices into evidence, along with various correspondence between the parties.

Spradley testified that he is a patent attorney and began practice in 2009. At that time, he and his former spouse divorced, and he was awarded primary managing conservatorship of their two children. When his former spouse filed the underlying modification suit in November 2015, he sought representation from Orsak LP. Spradley testified that, during the initial consultation, Michael Orsak stated that defending the case would cost "around $15,000.00." On December 2, 2015, Spradley met with Orsak. Spradley testified that, during the meeting, Orsak emphasized that the trial court judge to whom the modification suit had been (originally) assigned was his former law partner and that he had had a "very long relationship" with him and thought he would be successful. Spradley retained Orsak LP that day, agreed to pay a retainer of $12,000.00, and executed the Agreement.

Spradley testified that Orsak LP's first bill to him in February 2016 was for $11,334.53. He believed that Orsak LP was "grossly overbilling for very simple documents." He testified that, when he inquired, Michael Orsak admitted that he does not always bill by the time; rather, he bills by the "perceived value of the task." When Spradley characterized Orsak's billing practices as unethical, Orsak became angry, threatened to withdraw, and stated that he would "talk to" the trial court judge

7

over the case. Spradley demanded that he be billed in accordance with the fee Agreement, which provided for work to be billed by the hour. Spradley testified that, thereafter, however, Orsak LP continued to bill him for work that it did not do, work not yet completed, and work that Spradley had directed Orsak not to perform. Spradley testified regarding his concerns with each of the invoices. The modification suit went to trial in November 2016. Before a final judgment was rendered, however, Spradley and his former spouse settled. Of the $80,935.23 that Orsak LP billed him over the course of the year, Spradley testified that he paid $34,500.00. He and Orsak met in January 2017 to try to resolve their dispute but were unsuccessful.

During Spradley's testimony, he raised the matter of Orsak LP's fiduciary duties. The trial court sustained Orsak LP's objections on the grounds that Spradley had not designated himself as an expert and that, the trial court having previously granted Orsak LP summary judgment on Spradley's breach-of-fiduciary-duty counterclaim, there was no longer a live pleading in the matter.

At the charge conference, Spradley requested that the trial court instruct the jury regarding factors applicable to determining "whether work by a legal secretary is billable." Spradley also requested that the trial court submit a question to the jury regarding whether Orsak LP complied with its fiduciary duties. The trial court denied Spradley's requests.

The jury found that Spradley breached the Agreement and answered that Orsak LP was entitled to damages in the amount of $31,450.23. In its final judgment, the trial court awarded Orsak LP damages in the amount of $31,450.23 and awarded it attorney's fees of $27,038.35.

## Legal Sufficiency

In his third issue, Spradley argues that that evidence at trial was legally insufficient to support the award of damages to Orsak LP for unpaid attorney's fees because its invoices included sums for "work purported to be performed by a legal assistant." Spradley argues that, "[a]s a matter of law, legal assistant billings by [Orsak LP] are not recoverable" because it failed to present evidence of certain supporting factors.

### *Standard of Review*

When a party challenges the legal sufficiency of the evidence to support an adverse finding on which it did not have the burden of proof, it must demonstrate that there is no evidence to support the adverse finding. *See Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 215 (Tex. 2011). We will sustain a no-evidence challenge if the record shows: (1) a complete absence of evidence of a vital fact, (2) that rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) that the evidence offered to prove a vital fact is no more than a scintilla, or (4) that the evidence establishes conclusively

the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). In conducting a legal-sufficiency review, a "court must consider evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it." *Id*. at 822. Jurors are the sole judges of the credibility of the witnesses and the weight to give their testimony and may choose to believe one witness and to disbelieve another. *Id*. at 819. "Courts reviewing all the evidence in a light favorable to the verdict thus assume that jurors credited testimony favorable to the verdict and disbelieved testimony contrary to it." *Id*.

If more than a scintilla of evidence supports the challenged finding, we must uphold it. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). "[W]hen the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) (internal quotations omitted). If the evidence at trial would enable reasonable and fair-minded people to differ in their conclusions, then factfinders must be allowed to do so. *City of Keller*, 168 S.W.3d at 822. "A reviewing court cannot substitute its judgment for that of the trier-of-fact, so long as the evidence falls within this zone of reasonable disagreement." *Id*.

***Attorney's Fees as Contract Damages***

An attorney may recover unpaid hourly fees for professional services rendered under the usual rules of contract law. *McRay v. Dow Golub Remels & Beverly, LLP*, 554 S.W.3d 702, 705 (Tex. App.—Houston [1st Dist.] 2018, no pet.). To prevail on its breach-of-contract claim for unpaid fees, Orsak LP was required to establish (1) a valid contract with Spradley; (2) that it performed or tendered performance of its obligations; (3) that Spradley breached the terms of the contract; and (4) the amount of damages that Orsak LP sustained as a result of the breach. *See id.* Spradley does not dispute that the Agreement constitutes a valid contract or that Orsak LP performed its obligations under the Agreement. *See id.* And, Spradley does not dispute that he did not pay all of Orsak LP's invoices. *See id.* Rather, Spradley challenges the jury's finding that Orsak LP was entitled to damages of $31,450.23. He complains that Orsak LP billed "substantial amounts" for work "purported to be performed by a legal assistant," generally citing 17 exhibits containing invoices. He asserts that, as a matter of law, such sums are not recoverable because there is no evidence of the required factors applicable to such recovery, citing *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 763 (Tex. 2012).

With respect to suits for unpaid fees, this Court, in *McRay*, noted that the Texas Supreme Court has observed that "[w]hen interpreting and enforcing attorney-client fee agreements, it is not enough to simply say that a contract is a contract.

11

There are ethical considerations overlaying the contractual relationship." 554 S.W.3d at 705 (quoting *Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557, 560 (Tex. 2006)). An attorney's contract remedy is subject to the prohibition against charging or collecting an unconscionable fee. *Id.* (citing TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.04(a), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (TEX. STATE BAR R. art. X, § 9) (listing factors in determining reasonableness of fees and prohibiting lawyers from charging or collecting unconscionable fees)). The Supreme Court has "applied Rule 1.04 as a rule of decision in disputes concerning attorney's fees." *Id.* (quoting *Walton*, 206 S.W.3d at 561 n.6).

In *Olivas*, the supreme court noted that, when obtaining payment for work done by paralegals or legal assistants, Texas courts have required evidence of: (1) the qualifications of the legal assistant to perform substantive legal work; (2) that the legal assistant performed substantive legal work under the direction and supervision of an attorney; (3) the nature of the legal work performed; (4) the legal assistant's hourly rate; and (5) the number of hours expended by the legal assistant. 370 S.W.3d at 763.

In *Chevron Chemical Co. v. Southland Contracting*, Chevron argued that the evidence was legally insufficient to support the jury's award of $300,000 in attorney's fees because the award improperly included fees for legal assistants. No. 05-96-00560-CV, 1998 WL 640987, at *3 (Tex. App.—Dallas Sept. 21, 1998, pet.

12

denied). The court of appeals observed that, to recover fees for a legal assistant as part of an award of attorney's fees, the evidence must establish the factors listed above. *Id.* at *3 n.2. In *Chevron*, however, "[n]owhere in the charge [was] the jury allowed to consider legal assistant services as a factor in its attorney's fees finding." *Id.* at *4. Chevron argued that the jury must have included legal assistant fees as part of its attorney's fees finding because Southland included legal assistant time in its evidence of attorney's fees. *Id.* The court concluded, however, that the jury's award was fully supported by the evidence of attorney's fees alone, without regard to any of the fees billed for legal assistant services. *Id*. at *5. Thus, there was more than a scintilla of evidence supporting the award. *Id.*

Here, Michael Orsak testified at trial that his fees are customary for Fort Bend County and that his hourly rate is below that of a 40-plus-year trial lawyer in the area. He further testified regarding the details of the work that he performed for Spradley and that the hours expended and overall fees charged were reasonable and necessary for the services rendered. *See McRay*, 554 S.W.3d at 705. The trial court admitted into evidence Orsak LP's detailed invoices and a spreadsheet summation of its fees. The evidence shows that Orsak LP billed Spradley a total of $80,935.23. Of this amount, Orsak LP billed fees of $79,735.00 and expenses of $1,200.23. Orsak LP's fees included $6,895.00 for legal-assistant work. It is undisputed that Spradley paid Orsak $34,500.00, leaving a total balance owed on his account of

$46,435.23. In the trial court's charge, the jury was asked "what sum of money, if any, . . . would fairly and reasonably compensate [Orsak LP] for its damages," and the jury answered $31,450.23. Thus, the jury awarded $14,985.00 less than Orsak LP requested. And, like in *Chevron*, the jury's award is fully supported by evidence of attorney's fees alone, without regard to any of the $6,895.00 in fees billed for legal assistant services. *See Chevron*, 1998 WL 640987, at *5.

Considering the evidence in the light most favorable to the verdict, we conclude that there is more than a scintilla of evidence to support the jury's award to Orsak LP of $31,450.23 in unpaid fees. *See Exxon Corp.*, 348 S.W.3d at 215; *City of Keller*, 168 S.W.3d at 810. We hold that the evidence is legally sufficient to support the jury's finding. *See Formosa Plastics Corp. USA*, 960 S.W.2d at 48.

We overrule Spradley's third issue.

### Charge Error

In his fourth issue, Spradley argues that the trial court erred in refusing to submit an instruction to the jury delineating the factors noted above in *Olivas*, pertaining to the recovery of attorney's fees for work performed by legal assistants. In his second issue, Spradley argues that the trial court erred in refusing to submit a question to the jury as to whether Orsak LP complied with its fiduciary duty.

A trial court has wide discretion in submitting jury instructions and questions. *Moss v. Waste Mgmt. of Tex., Inc.*, 305 S.W.3d 76, 81 (Tex. App.—Houston [1st

14

Dist.] 2009, pet. denied). We review a trial court's decision to submit or refuse a particular jury instruction or question for an abuse of discretion. *Id.* When a trial court refuses to submit a requested instruction on an issue raised by the pleadings and evidence, the question on appeal is whether the request was reasonably necessary to enable the jury to render a proper verdict. *See Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006). Jury questions submitted must: (1) control the disposition of the case; (2) be raised by the pleadings and the evidence; and (3) properly submit the disputed issues for the jury's determination. *Ginn v. NCI Bldg. Sys., Inc.*, 472 S.W.3d 802, 828 (Tex. App.—Houston [1st Dist.] 2015, no pet.); *see* TEX. R. CIV. P. 277, 278. A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner, or acts without reference to guiding rules or principles. *Moss*, 305 S.W.3d at 81. We will not reverse a trial court's judgment for charge error unless the error was harmful in that it probably caused the rendition of an improper judgment or probably prevented the appellant from properly presenting the case to the court of appeals. *See* TEX. R. APP. P. 44.1(a).

First, to complain of a trial court's omission of a requested instruction, a party must have submitted a "written request to the trial court for a substantially correct instruction." *Jarrin v. Sam White Oldsmobile Co.*, 929 S.W.2d 21, 25 (Tex. App.—Houston [1st Dist.] 1996, writ denied); *see* TEX. R. CIV. P. 278. Here, the record reflects that, although Spradley orally requested at trial that the jury be instructed

regarding awarding fees for the work of legal assistants, the trial court then instructed him to submit "specifically what instruction [he] would want and how [he] want[ed] it." Spradley's written proposed charge to the trial court, however, does not include an instruction on fees for legal assistants. Because Spradley does not direct us to any point in the record in which he submitted a "written request to the trial court for a substantially correct instruction" pertaining to such fees, we conclude that error, if any, is not preserved. *See Jarrin*, 929 S.W.2d at 25.

Spradley next argues that the trial court erred in refusing to submit a question to the jury as to whether Orsak LP complied with its fiduciary duties because the issue is raised by the pleadings and evidence.

The record shows that when, during Spradley's testimony, he attempted to raise the issue of whether Orsak LP had complied with its fiduciary duties, the trial court sustained Orsak LP's objection, in part, on the ground that the trial court having previously granted Orsak LP summary judgment on Spradley's breach-of-fiduciary-duty counterclaim, there was no longer a live pleading in the matter. *See Ginn*, 472 S.W.3d at 828 (holding trial court's discretion is subject to requirement that questions submitted: (1) control the disposition of the case, (2) be raised *by the pleadings* and the evidence, and (3) properly submit the disputed issues for the jury's determination). The record supports the trial court's ruling.

Spradley argues that his requested jury question was not related to his breach-of-fiduciary-duty counterclaim and was instead integral to Orsak LP's breach-of-contract claim because a presumption of unfairness or invalidity attaches to contracts between attorneys and their clients. We note, however, that a presumption of unfairness or invalidity attaches to "[c]ontracts between attorneys and their clients negotiated *during the existence* of the attorney-client relationship." *Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co.*, 20 S.W.3d 692, 699 (Tex. 2000) (emphasis added). In *Keck*, the presumption applied because the release at issue was negotiated during the law firm's representation of the client. *Id.* at 699 n.3. The court noted that, had there not been an *existing* attorney-client relationship at the time the release was executed, the presumption would not have arisen. *Id.*

Here, because there was *not* an *existing* attorney-client relationship at the time that Orsak and Spradley entered into the Agreement, a presumption of invalidity does not apply to the Agreement. *Cf. id.* Rather, an attorney-client relationship arises when the attorney agrees to render professional services to the client. *Greene's Pressure Treating & Rentals, Inc. v. Fulbright & Jaworski, L.L.P.*, 178 S.W.3d 40, 43 (Tex. App.—Houston [1st Dist.] 2005, no pet.). Accordingly, the trial court did not err in refusing to submit a question to the jury regarding whether Orsak complied with his fiduciary duties.

We overrule Spradley's second and fourth issues.

17

## Summary Judgment

In his first issue, Spradley argues that the trial court erred in granting Orsak LP's motion for no-evidence summary judgment on Spradley's counterclaims for breach of fiduciary duty, legal malpractice, breach of contract, violations of the DTPA, and fraud because Spradley presented more than a scintilla of evidence of the challenged elements of his claims. *See* TEX. R. CIV. P. 166a(i).[2]

---

[2]     As discussed above, Spradley's claims against Orsak LP for breach of fiduciary duty, legal malpractice, breach of contract, violations of the DTPA, and fraud are all based on alleged improper billing by Orsak LP. and present identical, or nearly identical, allegations. Normally, as a threshold matter, before deciding whether the trial court erred in granting summary judgment on Spradley's counterclaims, we must first determine the precise nature of Spradley's claims. *See Greathouse v. McConnell*, 982 S.W.2d 165, 171 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). The rule against dividing or fracturing a negligence claim prevents legal malpractice plaintiffs from opportunistically transforming a claim that sounds only in negligence into other claims. *See id.* at 172; *Murphy v. Gruber*, 241 S.W.3d 689, 692 (Tex. App.—Dallas 2007, pet. denied) ("Whether allegations against a lawyer, labeled as breach of fiduciary duty, fraud, or some other cause of action, are actually claims for professional negligence or something else is a question of law to be determined by the court."). For the rule to apply, however, the gravamen of the client's complaint must focus on the quality or adequacy of the attorney's representation. *See Greathouse*, 982 S.W.2d at 172 (noting that although client alleged separate and distinct causes of action, crux of each claim was that attorney did not provide adequate legal representation). As discussed here and below, the gravamen of Spradley's complaint does not focus on the adequacy of Orsak LP's representation, but on whether Orsak LP improperly benefited from its representation of Spradley. *See, e.g.*, *Kennedy v. Gulf Coast Cancer & Diagnostic Ctr. at Se., Inc.*, 326 S.W.3d 352, 360 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ("The essence of a claim for breach of fiduciary duty focuses on whether an attorney obtained an improper benefit from representing the client."). Thus, the rule does not apply.

18

### *Standard of Review*

We review a trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). We take as true all evidence favorable to the non-movant and indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Id*. If a trial court grants summary judgment without specifying the ground, we must uphold the trial court's judgment if any of the asserted grounds are meritorious. *Beverick v. Koch Power, Inc*., 186 S.W.3d 145, 148 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

To prevail on a motion for no-evidence summary judgment, the movant must establish that there is no evidence to support an essential element of the non-movant's claim. *See* Tex. R. Civ. P. 166a(i); *Hahn v. Love*, 321 S.W.3d 517, 523–24 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). The burden then shifts to the non-movant to present evidence raising a genuine issue of material fact as to each of the elements challenged in the motion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The motion may not be granted if the non-movant brings forth more than a scintilla of evidence to raise a genuine issue of material fact on the challenged elements. *See Ridgway*, 135 S.W.3d at 600. More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997) (internal quotations omitted).

***Breach of Fiduciary Duty***

The elements of a claim for breach of fiduciary duty are: (1) a fiduciary relationship between the plaintiff and defendant; (2) a breach of fiduciary duty by the defendant; and (3) resulting injury to the plaintiff or a benefit to the defendant. *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied). It is undisputed that there existed an attorney-client relationship between Orsak and Spradley. Thus, a fiduciary duty arose as a matter of law. *See Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005).

Orsak LP argued in its motion for summary judgment that it was entitled to judgment on Spradley's counterclaim for breach of fiduciary duty because there is no evidence (1) that it breached its fiduciary duties to Spradley or (2) that such breach resulted in injury to Spradley or a benefit to Orsak LP.

A breach of fiduciary duty occurs when an attorney benefits improperly from the attorney-client relationship by, among other things, subordinating his client's interests to his own, retaining the client's funds, engaging in self-dealing, improperly using client confidences, failing to disclose conflicts of interest, or making misrepresentations to achieve these ends. *Kimleco Petroleum, Inc. v. Morrison & Shelton*, 91 S.W.3d 921, 923 (Tex. App.—Fort Worth 2002, pet. denied). The essence of a breach of fiduciary duty claim involves the "integrity and fidelity" of the attorney. *Id*.

In *Riverwalk CY Hotel Partners, Ltd. v. Akin Gump Strauss Hauer & Feld, LLP*, the plaintiff alleged that certain legal fees charged by, and paid to, a law firm were almost double the hourly rates set forth in the parties' written fee agreement and were excessive and unreasonable. 391 S.W.3d 229, 238 (Tex. App.—San Antonio 2012, no pet.). The plaintiff also alleged that the law firm "grossly overworked" the file, charged excessive fees, billed for unnecessary work, and provided legal services in a manner intended to unnecessarily increase the scope of litigation to increase its billings. *Id.* The court of appeals concluded that such claims constituted a breach-of-fiduciary-duty claim. *Id.* at 239.

Here, in his summary-judgment response, Spradley asserted that Orsak LP, through its attorney Orsak, breached its fiduciary duty to "act with integrity of the strictest kind," to "be strictly honest about fee arrangements and to refrain from inflating billing," and to follow client instructions. Spradley asserted that Orsak represented that he could complete the case for approximately $15,000.00, and Spradley executed the Agreement and paid a retainer of $12,000.00. Just two months after Orsak LP's representation began, however, it sent him an invoice for $11,334.53.53. Spradley asserted that Orsak LP billed "inordinately large amounts of time to perform simple tasks" and billed for work that had not yet been performed and for work that was never performed. Spradley asserted that when he confronted Orsak, he admitted that he did not bill according to the time he actually spent

21

performing tasks, as represented to Spradley at the outset of representation and as stated in their Agreement. Rather, Orsak admitted that he billed Spradley according to his "perceived value" of the task. Spradley further asserted that, when he challenged Orsak's billing practices, Orsak threatened to withdraw (on what was the eve of depositions) and intimated that he would take action to adversely affect Spradley's case (which involved potentially losing custody of his children).

In support of his assertions, Spradley presented his affidavit. After the trial court sustained Orsak LP's objections to portions of the affidavit, Spradley's remaining testimony was as follows, in pertinent part:

2. In November of 2015, I contacted [Orsak] for the purpose of scheduling a consultation for legal representation in a child custody modification suit. . . . When I met with [Michael Orsak ("Mr. Orsak")] for the consultation, we went over the facts of my case, and I told him I was very sensitive to cost. . . . He told me, based on the facts, he could complete the case for around [$15,000.00]. He said he would require a [$12,000.00] retainer paid up front. I left the meeting without engaging.

3. On a later day, I called Mr. Orsak to discuss the retainer. I reiterated my sensitivity to cost. He stated I could pay the first [$6,000.00] within a month of engaging and pay the remaining [$6,000.00] monthly in [$1,000] increments. Mr. Orsak stated before engagement and in his engagement agreement he would bill [$300.00 per hour] for hours worked by Mr. Orsak on my case, and he would bill [$100.00 per hour] for hours worked by his assistant on my case. Based on his assurances and representations, I engaged Mr. Orsak.

4. Early in my attorney-client relationship, it became known to me by seeing objects in Mr. Orsak's law office that Mr. Orsak was a former law partner with Judge Ronald Pope, the presiding judge on my child custody case. Mr. Orsak told me he still enjoyed a

close relationship with Judge Pope and would frequently have coffee with Judge Pope while in chambers.

5.  On February 28, 2016, I received an invoice from Mr. Orsak's firm[] for $10,245. I confronted Mr. Orsak . . . . For example, Mr. Orsak billed 1-hour for drafting, not including filing, a general denial and 1.25 hours for "Preparation of Certificate of Written Discovery and Request for Disclosure." Both documents only required a few blanks to be filled in, including the case number, court, and party information. . . . He billed 4.25 hours for "Preparation of Response to Request for Admissions, Response to Request for Production, Response to Request for Disclosure, Answers to Interrogatories and Certificate of Written Discovery.["] However Mr. Orsak had actually performed little to no work on those items. In reality, I prepared the responses, and emailed them to his secretary for her to Bates stamp.

6.  After receiving the February 28, 2016 invoice, [I] requested a meeting with Mr. Orsak to go over the invoice, and I met with Mr. Orsak to receive an explanation on why the bill was so high and why individual tasks were taking so much time. Mr. Orsak admitted that in reality, he only spent five minutes on the Answer. Mr. Orsak told me that he did not actually bill by the hour but instead charged me perceived value of the task. Mr. Orsak further admitted that most tasks take significantly less time than claimed on the invoice. I requested that he abide by the [Agreement] I signed on December 2, 2015 and bill me according to the time he actually spends performing work on my case. In response, Mr. Orsak threatened to drop me as a client if I questioned his billing practices any further. Such threat happened just days before the first deposition. Further, Mr. Orsak knew I had no money to hire a new attorney. In this meeting, I was adamant Mr. Orsak bill only for hours actually worked. Mr. Orsak further told me he would communicate his withdraw[al] from the case directly to the presiding Judge, Judge Ronald Pope, Mr. Orsak's former law partner. On multiple prior occasions, Mr. Orsak intimated he had and continued to have a close relationship with Judge Pope. Based on Mr. Orsak's comments, I feared firing Mr. Orsak would adversely affect my case, which was to be decided by Judge Pope. At the end of the

23

meeting, Mr. Orsak assured me his fees would not exceed $25,000.

7. Mr. Orsak continued to bill for time he did not spend on my case. On or about April 30, 2016, Mr. Orsak sent me an invoice that included the 3.75 hours he allegedly spent attending mediation on April 26, 2017. He did not spend 3.75 hours on mediation . . . . I should not be charged for the time Mr. Orsak spent on issues unrelated to my case.

8. On May 31, 2016, I received an invoice from Mr. Orsak that stated that he spent 3.5 hours preparing a Motion for Enforcement of Child Support. . . . On June 30, 2016, I received another invoice from Mr. Orsak where he billed me an additional 1.5 hours, and his assistant billed 1.75 hours for continuing to work on the Motion for Enforcement of Child Support. . . .

. . . .

10. On August 31, 2016, Mr. Orsak sent me an invoice where he billed me 0.75 hours for reviewing a motion to quash the deposition of Daniel Barragan, as well as research. His assistant billed 0.25 hours on the same task. In the same invoice, there was another billing entry for the preparation on a response to the Motion to Quash the Deposition plus research where he billed me 4.5 hours, and his assistant billed me 2.5 hours. Despite the fact he Mr. Orsak billed a total of 8.0 hours for this task, the actual motion was only twenty-seven sentences and contained no citations to case law. . . .

11. Mr. Orsak asked me many times if I wanted an amicus appointed for the children. Each time, I was adamant that I did not want an amicus and instructed him not to pursue it. Yet, Mr. Orsak on August 31, 2016, billed [me] a total of 3.0 hours for the preparation of a motion and order to appoint an amicus. He charged me for work I expressly asked him not to perform.

. . . .

13. In January 2017, I also discovered Mr. Orsak billed me [4] hours for "preparation of final documents" on his invoice marked Invoice #10, with no date. I know he did not perform this task because I performed this task myself. In settling my case, I met with my ex-wife to draft the final documents. Then I brought

24

> them to his office where he told me what changes needed to be made. He billed me separately for this meeting on invoice #11. [He] then billed me 1.25 hours for him and 1.25 hours for his assistant to put a cover sheet on the final documents.

Spradley also attached to his response documents referenced in his affidavit, Orsak's invoices, and excerpts of the deposition of Orsak.

Orsak LP's obtaining its fees is not, standing alone, an improper benefit sufficient to constitute a breach of fiduciary duty. *See Ashton v. KoonsFuller, P.C.*, No. 05-16-00130-CV, 2017 WL 1908624, at *4 (Tex. App.—Dallas May 10, 2017, no pet.) (mem. op.). However, a lawyer has a duty, at the outset of representation, to inform a client of the basis or rate of the fees and the contract's implications for the client. *Walton*, 206 S.W.3d at 565. A lawyer has a duty to inform the client of all material facts, and this duty requires that a lawyer's fee agreement be clear. *Bennett v. Comm'n for Lawyer Discipline*, 489 S.W.3d 58, 70 (Tex. App.—Houston [14th Dist.] 2016, no pet.). The lawyer must conduct his business with his client with inveterate honesty and loyalty and must always keep the client's best interest in mind. *See Walton*, 206 S.W.3d at 561. A breach of fiduciary duty occurs when an attorney benefits *improperly* from the attorney-client relationship by, inter alia, making material misrepresentations, subordinating his client's interests to his own, or taking advantage of the client's trust. *Kimleco Petroleum*, 91 S.W.3d at 923; *see also Goffney v. Rabson*, 56 S.W.3d 186, 193 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).

25

Here, Spradley presented evidence that Orsak represented in December 2015 that he could complete the case for approximately $15,000.00. In reliance, Spradley hired Orsak LP and paid a retainer of $12,000.00. On February 26, 2016, just shortly after Orsak LP's representation began, Spradley received an invoice from Orsak LP for $10,245.00, some two-thirds of the entire projected cost of representation in the modification suit. Spradley testified that, when he inquired, Orsak "admitted that most tasks take significantly less time than claimed on the invoice" and admitted that Orsak LP did not bill Spradley based on the hourly time actually expended on a task, as agreed at the outset of Orsak LP's representation and as represented in the Agreement, but billed according to Orsak's "perceived value of the task." Thus, Spradley presented some evidence that Orsak LP misrepresented its billing practices and benefited itself at Spradley's expense. Taking as true all evidence favorable to Spradley, as non-movant, and indulging every reasonable inference and resolve any doubts in his favor, as we must, we conclude that Spradley presented more than a scintilla of evidence that Orsak LP, through its attorney Orsak, breached its fiduciary duties to Spradley. *See Kimleco Petroleum*, 91 S.W.3d at 923; *see also Valence Operating Co.*, 164 S.W.3d at 661.

With respect to Orsak LP's assertion that Spradley could show no evidence that a breach of its fiduciary duties caused him damages, Spradley's petition reflects that he sought "to have [Orsak] forfeit any and all fees collected by [Orsak] from

26

[Spradley] due to [Orsak's] breach of fiduciary duty." A client who sues his attorney for breach of fiduciary duty seeking the equitable remedy of fee forfeiture need not show evidence of causation or actual damages. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 221 (Tex. 2017) ("It is the agent's disloyalty, not any resulting harm, that violates the fiduciary relationship and thus impairs the basis for compensation."); *Burrow v. Arce*, 997 S.W.2d 229, 240 (Tex. 1999) ("[A] client need not prove actual damages in order to obtain forfeiture of an attorney's fee for the attorney's breach of fiduciary duty to the client."); *Hoover v. Larkin*, 196 S.W.3d 227, 233 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) ("Fee forfeiture is an equitable remedy whose primary purpose is not to compensate the injured client, but to protect the relationship of trust between attorney and client by discouraging attorney disloyalty.").

Because it is undisputed that Orsak LP had a fiduciary duty to Spradley, and we have concluded that Spradley presented more than a scintilla of evidence of a breach of that duty, and Spradley was not required to present evidence of causation or damages, we conclude that Orsak LP did not establish its right to summary judgment on Spradley's claim for breach of fiduciary duty. *See* TEX. R. CIV. P. 166a(i); *Hahn*, 321 S.W.3d at 523–24. Accordingly, we hold that the trial court erred in granting summary judgment for Orsak LP on Spradley's claim for breach of fiduciary duty.

27

*Legal Malpractice*

In a claim for legal malpractice, the former client must show (1) the existence of a duty of care owed to the client, (2) that the duty was breached, and (3) that the breach proximately caused damage to the client. *Starwood Mgmt., LLC v. Swaim*, 530 S.W.3d 673, 678–79 (Tex. 2017). Orsak LP, in its motion for summary judgment, asserted that there is no evidence that it breached a duty of care and that such breach caused Spradley injury.

A legal malpractice claim alleges professional negligence in failing to exercise the degree of care, skill, and diligence as attorneys of ordinary skill and knowledge commonly possess and exercise. *Sullivan v. Bickel & Brewer*, 943 S.W.2d 477, 481 (Tex. App.—Dallas 1995, writ denied). Generally, a breach of duty can include giving an erroneous opinion or bad advice, delaying or failing to handle a matter entrusted to the attorney's care, or not using an attorney's ordinary care in preparing, managing, and prosecuting litigation. *Greathouse v. McConnell*, 982 S.W.2d 165, 172 (Tex. App.—Houston [1st Dist.] 1998, pet. denied); *Murphy v. Gruber*, 241 S.W.3d 689, 693 (Tex. App.—Dallas 2007, pet. denied). The focus of a legal malpractice claim is on whether the attorney represented the client with the requisite level of skill. *Beck v. Law Offices of Edwin J. (Ted) Terry, Jr., P.C.*, 284 S.W.3d 416, 429 (Tex. App.—Austin 2009, no pet.). When a legal-malpractice claim arises from prior litigation, the plaintiff-client must prove that he would have

28

obtained a more favorable result in the underlying litigation had the attorney conformed to the proper standard of care. *Rogers v. Zanetti*, 518 S.W.3d 394, 401 (Tex. 2017).

Here, Spradley, in his summary-judgment response, alleged that Orsak LP committed legal malpractice because it breached its duty of care by billing "unreasonable amounts of time for simple tasks"; billing based on the perceived value of the task and not on the actual time spent performing the task; and billing for the time to prepare a motion and order to appoint an amicus attorney for the children, despite Spradley's instruction to the contrary. In support, Spradley points to his affidavit testimony that Orsak told him that Orsak LP billed Spradley based on the "perceived value" of the task, and not on the actual time spent performing the task, and that Orsak billed for time to prepare a motion and order to appoint an amicus attorney, contrary to Spradley's instruction. Spradley also points to an invoice entry showing that, on August 31, 2016, he was billed for the preparation of a motion and order to appoint an amicus attorney.

Spradley does not allege, however, that Orsak failed to exercise the "degree of care, skill, or diligence as attorneys of ordinary skill and knowledge commonly possess" or that Orsak inadequately represented him. *Deutsch v. Hoover, Bax & Slovacek, L.L.P*, 97 S.W.3d 179, 189 (Tex. App.—Houston [14th Dist.] 2002, no pet.); *see also Murphy*, 241 S.W.3d at 692–93. And, his testimony and invoice entry

do not constitute evidence of *inadequate* legal representation. *See Beck*, 284 S.W.3d at 429 (holding legal malpractice claim focuses on whether attorney represented client with requisite level of skill); *Greathouse*, 982 S.W.2d at 172.

We conclude that Spradley did not present evidence of a breach by Orsak LP of its duty to adequately represent him or to do so with the requisite level of skill. *See Beck*, 284 S.W.3d at 429; *Greathouse*, 982 S.W.2d at 172. We hold that the trial court did not err in granting summary judgment in favor of Orsak LP on Spradley's counterclaim for legal malpractice. *See* TEX. R. CIV. P. 166a(i); *Mack Trucks*, 206 S.W.3d at 584.

### *Breach of Contract*

A claim for breach of contract requires proof of: (1) a valid contract; (2) performance or tendered performance by the plaintiff; (3) that the defendant breached the contract terms; and (4) damages sustained as a result of the breach. *McRay*, 554 S.W.3d at 705. In its motion for summary judgment, Orsak LP asserted that there is no evidence of Spradley's performance of his obligations under the Agreement, a breach by Orsak LP, or damages sustained as a result of the breach.

With respect to the second element, Spradley, in his summary-judgment response, asserts that he performed or tendered performance of his own obligations under the Agreement. In support, he points to the provision of the Agreement requiring that he pay an initial retainer of $12,000.00 as follows: $4,000.00 at the

30

time of contract execution, $2,000.00 at the "end of December" 2015, and "[t]he balance of the retainer [at] $1,000.00 per month on the first day of each month until paid in full, beginning the 1st day of February 1, 2016." Spradley asserted that the invoices, which he attached to his response, show that he "exceeded his obligation of paying $1,000.00 every month" *throughout* 2016. And, he notes, Orsak LP "admits that [Spradley] ha[d] paid $34,000.00 as of February 17, 2017."

To show that he performed or tendered performance of his own contractual obligations, a plaintiff must demonstrate that he complied with the contract's provisions. *M7 Capital LLC v. Miller*, 312 S.W.3d 214, 222 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). Here, the cited provision of the Agreement authorized Spradley to pay "[t]he balance of the retainer," i.e., $12,000.00, in increments of $1,000.00 per month on the first day of each month "*until paid in full, beginning the 1st day of February 1, 2016.*" (Emphasis added.) Nothing in the Agreement authorized Spradley to continue payments at that level throughout 2016 or throughout the representation. Further, Spradley asserts in his response, and it is undisputed, that he stopped paying Orsak's invoices in February 2017 and did not pay in full the balance reflected on the invoices. Thus, the cited provision of the Agreement and invoices do not constitute evidence that Spradley performed or tendered performance of his own contractual obligations. *See id.*

We conclude that Spradley did not present evidence to raise a genuine issue of material fact with regard to his performance or tendered performance of his own obligations under the Agreement. *See Ridgway*, 135 S.W.3d at 600; *Havner*, 953 S.W.2d at 711. Accordingly, we hold that the trial court did not err in granting summary judgment in favor of Orsak LP on Spradley's counterclaim for breach of contract. *See* TEX. R. CIV. P. 166a(i); *Mack Trucks*, 206 S.W.3d at 584.

### *DTPA and Fraud*

With respect to Spradley's counterclaims for violations of the DTPA and for fraud, we note that Spradley did not address these claims in his summary-judgment response. Accordingly, because the trial court was then required to grant Orsak LP's motion for summary judgment on these claims, we hold that the trial court did not err in so doing. *See* TEX. R. CIV. P. 166a(i) ("The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact."); *see also* TEX. R. CIV. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal.").

In sum, we sustain the portion of Spradley's first issue in which he asserts that the trial court erred in granting summary judgment for Orsak LP on Spradley's counterclaim for breach of fiduciary duty. We overrule the remaining portions of Spradley's first issue.

## Conclusion

We reverse the portion of the trial court's judgment in which it grants summary judgment in favor of Orsak LP on Spradley's counterclaim for breach of fiduciary duty and remand that claim for further proceedings.[3] We affirm the trial court's judgment in all other respects.


Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Hightower and Adams.

---

[3] *See Burrow v. Arce*, 997 S.W.2d 229, 240–46 (Tex. 1999); *Gregory v. Porter & Hedges, LLP*, 398 S.W.3d 881, 885–86 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (holding that attorney disgorges fees that client has actually paid and noting that total fee forfeiture is not favored).